42 A.3d 983

**COMMONWEALTH of Pennsylvania, Appellee.**

v.

**Seifullah ABDUL–SALAAM, Appellant.**

Supreme Court of Pennsylvania.

Submitted Aug. 29, 2011.

Decided April 5, 2012.

Elizabeth Ann Larin, Federal Community Defender Office, Eastern District of PA, Michael Wiseman, David Lee Zuckerman, Defender Association of Philadelphia, Philadelphia, for Seifullah Abdul–Salaam.

Jaime M. Keating, Cumberland County District Attorney's Office, Amy Zapp, PA Office of Attorney General, Harrisburg, for Commonwealth of Pennsylvania.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## *ORDER*

PER CURIAM.

**AND NOW,** this 5th day of April, 2012, the Order of the Court of Common Pleas of Cumberland County, denying relief under the Post–Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541–9546, is hereby **AFFIRMED.** We write in elaboration primarily to address concerns of the federal district court, which has pending before it appellant's petition for a writ of *habeas corpus.*[1]

■ This matter involves capital appellant Seifullah Abdul–Salaam's appeal from the denial of relief related to a third PCRA petition. *See Commonwealth v. Abdul–Salaam,* 571 Pa. 219, 812 A.2d 497 (2002) (second petition) *("Abdul–Salaam III")* and *Commonwealth v. Abdul–Salaam,* 570 Pa. 79, 808 A.2d 558 (2001) (first petition) *("Abdul–Salaam II").* The petition involves a return to Pennsylvania state court to exhaust a *Brady*[2] claim that emerged in federal *habeas corpus* proceedings. Notably, in directing appellant to exhaust this claim, the Honorable John E. Jones, III, of the U.S. District Court for the Middle District of Pennsylvania, opined that a proper assessment of the "materiality" of the allegedly suppressed evidence required consideration of the cumulative

---

1. According to appellant's brief, the Philadelphia Federal Community Defender's Office ("FCDO" or "Defender") was appointed on December 9, 2002, to pursue federal *habeas* relief. Notably, Defender lawyers (including Robert Dunham and Michael Wiseman) had represented appellant in his two prior PCRA matters, including the appeals to this Court, before any federal court appointed them. Also of note, on August 31, 2011, the FCDO filed a "praecipe for withdrawal of appearances" of the two Defenders whose names appeared, along with Wiseman's, on appellant's brief in this case. The praecipe advises that appellant "will hereafter be represented *pro bono* by MICHAEL WISEMAN, ESQ.," and then lists a private Post Office Box in Swarthmore, PA as Wiseman's mailing address. No explanation is given for Wiseman's supposed new *"pro bono"* role. Obviously if he is financed by federal tax dollars, he is not acting *pro bono;* indeed he may be paid, *contra bono publico* counsel. Nor has the FCDO cited authorization for it to unilaterally negate a federal court order of appointment—assuming the federal court appointment authorized the FCDO's "ancillary" conduct here in the first place.

2. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

effect of this evidence with evidence that was the subject of another *Brady* claim appellant raised in a prior PCRA petition. *Abdul–Salaam v. Beard,* 2008 WL 2704605 (M.D.Pa.6/7/2008) (unreported).

The legal basis for this cumulation inquiry is found in *Kyles v. Whitley,* 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995), wherein the U.S. Supreme Court held that a court conducting a *Brady* materiality analysis must consider the "cumulative" or "collective" effect of the suppressed evidence. *See also Cone v. Bell,* 556 U.S. 449, 129 S.Ct. 1769, 1782–86, 173 L.Ed.2d 701 (2009) (discussing *Kyles* and considering whether cumulative or collective effect of suppressed evidence was material). Judge Jones articulated his concern as follows: "Our decision to withhold judgment here is rooted in the potentially pending cumulative analysis of the PCRA court with respect to the materiality of all of the undisclosed evidence. . . . The Court is convinced that, for purposes of a determination of materiality of any allegedly suppressed evidence under *Kyles,* the DNA evidence must be placed into the proverbial mix along with the previously weighed Clifton evidence." *See Abdul–Salaam v. Beard,* 2008 WL 2704605, at *18.

Out of respect for the concerns of Judge Jones, and cognizant that appellant adverts to the cumulation theory in his brief, albeit he does not separately argue the point, we will address *Brady* cumulation. As Judge Jones noted, for purposes of any cumulation analysis, there are two separate pieces of evidence: (1) allegedly suppressed evidence relating to a police interview conducted prior to trial with Tony Clifton, the contents of which were memorialized in "the Harlacker report," and the non-disclosure of which was the basis for a *Brady* claim in appellant's first PCRA petition; and (2) "newly discovered" blood evidence that emerged during the federal *habeas* proceedings before Judge Jones, which was the primary subject of this serial PCRA petition.

Respecting the Clifton evidence, it appears that the Harlacker report was not turned over to the defense before trial. The interview with Clifton occurred on or about January 10,

1995 (2 months before trial).[3]  Detective John Harlacker testified to the contents of the report during the first PCRA proceeding.  Specifically, his testimony outlined that Clifton had stated that he was with appellant's co-conspirator, Scott Anderson, and another individual six hours prior to the robbery during which appellant murdered New Cumberland Police Officer Willis Cole. At that time, Clifton overheard the two men discussing a robbery.  Clifton also told Detective Harlacker that he was intoxicated when he was with the two men. Furthermore, Clifton told Detective Harlacker that he was able to identify Anderson, but was unable to identify the man who was with him.  Clifton also testified at the first PCRA proceeding and claimed that the man he saw with the co-conspirator six hours prior to the robbery and murder was not appellant.

The initial PCRA court addressed this claim on the merits in its opinion, concluding that the Clifton evidence was neither material nor exculpatory:

> Clifton's observations were made at a time when he was highly intoxicated.  Clifton, himself, had he been called as a witness would have been confronted with his prior record for *crimen falsi.*  The incident which he describes is separated from the actual robbery by many hours.  It does not serve, in any way, to contradict the accounts of eyewitnesses to the crime and forensic evidence which point with certainty to the guilt of petitioner.  As noted above, there is no violation of principles enunciated in *Brady v. Maryland* unless the evidence involved is material and exculpatory. The testimony of Tony Clifton was neither.

PCRA court opinion, 11/12/1998, at 9. On appeal, this Court did not engage in a merits analysis of this claim, indicating that it was defaulted.  *See Abdul–Salaam II,* 808 A.2d at 560.

For purposes of the *Kyles/Brady* cumulation analysis now of concern to Judge Jones, even if it is assumed that this information in the possession of governmental authorities was subject to *Brady* disclosure under U.S. Supreme Court prece-

---

**3.** Notably, discovery and trial in this case concluded before *Kyles* was decided on April 19, 1995.

dent governing in March of 1995, we agree with the initial PCRA court's determination that the Clifton interview was neither material nor exculpatory. Clifton's account may have been relevant to further inculpate Anderson, indicating his intention to commit a robbery, but it did nothing to exculpate appellant. Detective Harlacker's testimony indicated that Clifton claimed that he was able to identify Anderson, but was unable to identify the individual who was with Anderson. Clifton's inability to identify the other individual to Detective Harlacker does not exculpate appellant, it just fails to inculpate him in an association many hours before the robbery and murder. By the same token, Clifton's account to police that he had overheard Anderson and another individual discussing a robbery six hours before it occurred does nothing to exculpate appellant for his conduct, attested to by numerous eyewitnesses, and corroborated by, among other things, the gunshot wound he suffered in his exchange of lethal gunfire with Officer Cole. Therefore, it is not apparent that this evidence should even be considered in a cumulative effect of "suppressed" evidence analysis under *Kyles* and *Brady*.

For purposes of a *Kyles/Brady* cumulation inquiry, there is a similar difficulty with appellant's new claim deriving from blood/DNA evidence uncovered through federal *habeas* supplemental discovery. This evidence showed that DNA testing of another sample of blood on the steering wheel of the getaway car, which testimonial and other evidence at trial had shown had been driven by Anderson, was consistent with Anderson's DNA profile. Evidence that would further incriminate Anderson, and corroborate the Commonwealth's evidence that he was the driver of the getaway vehicle, does not tend to exculpate appellant.[4]

4. Appellant's briefing to this Court does not accurately account for the actual trial and PCRA evidence. Both appellant and Anderson were injured during the criminal episode: the evidence suggested that appellant was shot by Officer Cole, and Anderson's hand was injured during a skirmish with the store owner. At trial, the Commonwealth presented evidence that blood taken from the steering wheel of the getaway car, when tested, matched the blood type and blood enzymes of appellant and did not match the blood type and enzymes of Anderson. The Commonwealth used this evidence to help establish appellant's pres-

■ In any event, assuming that both the Clifton evidence and the new blood evidence should be considered in a *Kyles* cumulation analysis, the cumulative effect of these allegedly suppressed items of evidence does not warrant relief. In the *Brady* context, materiality includes an assessment of whether there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Kyles,* 514 U.S. at 433–34, 115 S.Ct. 1555; *see also Strickler v. Greene,* 527 U.S. 263, 280, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999); *Commonwealth v. Lambert,* 584 Pa. 461, 884 A.2d 848, 854 (2005). Notably, in his argument on *Brady* materiality, appellant fails to address the breadth of the trial evidence.[5] That evidence makes clear that whatever marginal use may have been made of Clifton's account and the blood evidence, its collective effect does not establish a reasonable probability that the result of the trial would have been different, *i.e.,* that appellant would have been acquitted.

The trial evidence included the following. The robbery and murder here occurred on a Friday morning during business hours on a commercial street. No less than four eyewitnesses identified appellant as Officer Cole's shooter at trial. The getaway car, driven by Anderson, was followed by an off-duty police officer. When appellant and Anderson abandoned the car and fled on foot, the off-duty police officer observed them and identified appellant as the individual exiting the passenger

ence in the getaway car. The Commonwealth also presented evidence that blood taken from the driver's side door of the getaway car when tested, was determined to match the blood type of Anderson and did not match appellant's blood type. The new blood evidence, deriving from the *habeas* proceedings and relating to different blood samples taken from the steering wheel than that tested by the Commonwealth before trial, corroborated Anderson's role, but did not disprove or negate the evidence of appellant's presence. Nor does the new evidence prove appellant's federal counsel's unsupported accusation that the Commonwealth "fabricated" the trial evidence. It is unsurprising that two confederates, on the run after having just murdered a police officer, and both having been injured, would both leave blood on the steering wheel of the vehicle.

5. Appellant's cumulation analysis is made in terms of identity and outright innocence, not in terms of degree of guilt or the penalty phase. Indeed, appellant asks this Court to vacate his conviction and sentence and preclude retrial on state double jeopardy grounds.

side of the car. In addition, trial evidence showed that the shooter was injured at the scene of the crime by Officer Cole; notably, when appellant was apprehended mere hours after the crime, he was transported to a hospital for a bullet wound to his leg. After appellant was apprehended, police conducted a consensual search of his girlfriend's residence where they found bloody clothing and a briefcase containing ammunition. Finally, appellant told the police officer who transported him to the hospital that he would tell his lawyer that "Scotty Love [6] did it," further implicating himself by revealing his knowledge of the fresh crime and Anderson's involvement. Given this overwhelming evidence, and considering the minimal, if any, effect of the Harlacker report and the blood/DNA evidence in exculpating appellant, he has not established a reasonable probability that the outcome of the trial would have been different.[7]

Order affirmed. Jurisdiction relinquished.

Justice EAKIN did not participate in the consideration or decision of this matter.

6. "Scotty Love" was the nickname of co-conspirator Scott Anderson.

7. Appellant raises a second claim on appeal, unrelated to the *Brady* claim Judge Jones directed him to exhaust. This claim alleges that a "new" National Academy of Science Report demonstrated the unreliability of the fingerprint evidence introduced at his trial. Appellant attacked the same fingerprint evidence, albeit premised upon different "new" evidence, in the appeal from the denial of his first serial PCRA petition in *Abdul–Salaam III*. This Court rejected the serial claim as follows: "Appellant's argument conveniently overlooks that even in the absence of such fingerprint evidence, there was overwhelming eyewitness testimony placing Appellant at the scene of the crime. At least four persons who were at the scene of the crime testified that Appellant shot the police officer. Thus, even if we were to accept Appellant's argument regarding the fingerprint evidence, Appellant is simply unable to show that the evidence would have altered the outcome of the trial." *Abdul–Salaam III*, 812 A.2d at 503. Since our disposition in *Abdul–Salaam III* turned on appellant's failure to demonstrate prejudice, his present claim, alleging a new basis for the same theory, does not remotely affect the prejudice assessment finally litigated during his second collateral proceedings and is plainly frivolous. *Cf. Commonwealth v. Williams*, 597 Pa. 109, 950 A.2d 294, 320 (2008) (conclusion on direct appeal that error was harmless because of overwhelming evidence of guilt undermined and ultimately defeated appellant's claim of ineffectiveness on collateral review because appellant could not

demonstrate prejudice); *Commonwealth v. Collins,* 585 Pa. 45, 888 A.2d 564, 574–75 (2005).