**COMMONWEALTH of Pennsylvania, Appellee**

**v.**

**Clarence R. DAVIS, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 6, 2014.

Filed Feb. 25, 2014.

Clarence R. Davis, appellant, pro se.

Hugh J. Burns, Jr., Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: BENDER, P.J., SHOGAN, J., and FITZGERALD, J.*

OPINION BY BENDER, P.J.

Appellant, Clarence R. Davis, appeals *pro se* from the trial court's September 21, 2012 order denying as untimely his second petition for relief under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541–9546. After careful review, we conclude that Appellant's petition satisfies an exception to the one-year time requirement of the PCRA. Therefore, we vacate the court's order denying Appellant's peti-

tion and remand for an evidentiary hearing.

On September 10, 1970, Appellant and three other individuals robbed the Polka Dot Bar in Philadelphia. Appellant was armed with a shotgun and, during the course of the robbery, he shot and killed the owner of the bar, Arthur Gilliard. Appellant was arrested and charged with first-degree murder and robbery.[1] Appellant proceeded to a jury trial on July 12 through 19, 1972. Pertinent to Appellant's assertions herein, at his trial, the Commonwealth presented the testimony of two witnesses, Jerome Watson and Michael Diggs.

Jerome Watson testified that he was walking his wife home on September 10, 197[0] shortly before the shooting when he observed [Appellant] with two other men across the street from the deceased's taproom, and that the men had what appeared to be a shotgun case. Mr. Watson further stated that in February of 1972 [Appellant] told him that he had shot the deceased. On cross-examination, Mr. Watson admitted that [Appellant's] February 1972 confession occurred while the two men were going to buy narcotics and that he volunteered the information to the police only after he was brought in for questioning about a different homicide for which he was never arrested. [Mr. Watson testified that he was not offered any leniency from the Commonwealth in exchange for his testimony against Appellant].

Michael Diggs testified that on September 10, 197[0] at approximately 9:30 p.m.[, Appellant] came to his home at 3130 Carlisle Street in Philadelphia and

---

* Former Justice specially assigned to the Superior Court.

1. Appellant was charged with murder under 18 Pa.C.S.A. § 4701 of the Penal Code, which has since been repealed. Under that provision, felony-murder was graded as murder of the first degree.

asked to borrow a jacket. Mr. Diggs stated that he got [Appellant] a jacket and then went with [Appellant] to the Old Gardens, a bar located four blocks from the deceased's taproom. At the bar, the two men ordered drinks and then heard that a man had been shot down the street. According to Mr. Diggs, he left the Old Gardens with [Appellant], Dora Connover, and Brenda Robinson and stopped at the deceased's taproom on their way back to his house. Mr. Diggs testified that upon arriving at his house, [Appellant] and the two women left and that when they returned a short time later, they had the twelve gauge shotgun which he had kept behind a clock in the dining room and which he had not known was missing. The shotgun case, however, was never returned. He further stated that [Appellant] knew where the shotgun was kept and had been in his house on several occasions between the time when he last saw the shotgun and when it was returned. Mr. Diggs also acknowledged that he had pled guilty to charges of being an accessory after the fact and was awaiting sentencing, but had not been promised anything for his testimony.

*Davis v. Cuyler,* 1986 WL 1526, *3 (E.D.Pa.1986).[2]

At the close of Appellant's trial, the jury convicted him of robbery and first-degree murder. The court sentenced Appellant to an aggregate term of life imprisonment. Our Supreme Court affirmed Appellant's judgment of sentence on March 25, 1974.

*Commonwealth v. Davis,* 455 Pa. 466, 317 A.2d 218 (1974).

On April 16, 1974, Appellant filed a petition for relief under the Post Conviction Hearing Act (PCHA), the precursor to the PCRA. That petition was ultimately dismissed by the PCHA court, and our Supreme Court affirmed on January 28, 1977. *Commonwealth v. Davis,* 470 Pa. 156, 367 A.2d 1089 (1977).

Appellant filed the instant *pro se* PCRA petition on May 9, 2008. Appellant contended, *inter alia,* that he discovered "new evidence" that Watson had lied in his testimony at Appellant's trial. The PCRA court appointed counsel, who was subsequently granted leave to withdraw after satisfying the dictates of *Commonwealth v. Turner,* 518 Pa. 491, 544 A.2d 927 (1988), and *Commonwealth v. Finley,* 379 Pa.Super. 390, 550 A.2d 213 (1988). On April 15, 2011, Appellant retained private counsel, who filed an amended petition on his behalf. In the amended petition, counsel added a claim that the Commonwealth improperly withheld evidence of deals it made with both Watson and Diggs in exchange for their testimony.

On August 17, 2012, the court issued a Pa.R.Crim.P. 907 notice of its intent to dismiss Appellant's petition.[3] While Appellant submitted a *pro se* response to the Rule 907 notice, the PCRA court ultimately issued an order on September 21, 2012, dismissing his petition as untimely. Appellant filed a timely *pro se* notice of appeal.[4] He raises the following five questions for our review:

---

**2.** This summary was composed by the United States District Court for the Eastern District of Pennsylvania in its February 4, 1986 disposition of a petition for writ of *habeas corpus* filed by Appellant.

**3.** The PCRA court states in its Pa.R.A.P. 1925(a) opinion that a PCRA hearing was conducted on June 15, 2012. However, the

docket indicates that on that date, the PCRA hearing was relisted. It does not appear that a PCRA hearing was ever held in this case.

**4.** At the time Appellant filed his *pro se* notice of appeal, he was still represented by his privately retained counsel. Accordingly, this Court issued an order directing the PCRA court to conduct a hearing pursuant to *Com-*

I. Did the (PCRA) court err, and commit reversible error when it dismissed [ ] Appellant's petition without the benefit of a properly conducted evidentiary hearing to determine the credibility of the presented statement(s) that led to the filing of the said petition, and therefore being able to render a fully informed legal opinion?

II. Did the (PCRA) court err, and commit reversible error when it failed to recognize a timely presented motion to the court, that was pertinent to the due process of the law with regards to final disposition of a (PCRA) petition?

III. Did the Commonwealth's attorney perpetrate a knowing fraud upon the court when they failed to disclose discoverable material to the defense, that it presented to the court at trial, and knew was inherently false in nature?

IV. Did the Commonwealth's prosecuting attorney err, and commit reversible error, when he permitted known false testimony to remain on the records uncorrected, when it was presented at a criminal trial, therefore, impeding justice and perpetrating a knowing fraud upon the Judiciary?

V. Did the (PCRA) court err, and commit reversible error when it omitted facts of record upon which Appellants [*sic*] claims are predicated and completely failed to address claims of Appellant that are properly preserved and presented to the court for review?

Appellant's Brief at 15.

To begin, we note that this Court's standard of review regarding an order denying a petition under the PCRA is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. *Commonwealth v. Ragan*, 592 Pa. 217, 923 A.2d 1169, 1170 (2007). The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. *Commonwealth v. Carr*, 768 A.2d 1164, 1166 (Pa.Super.2001).

■ Because the PCRA time limitations implicate our jurisdiction and may not be altered or disregarded in order to address the merits of a petition, we must start by examining the timeliness of Appellant's petition. *Commonwealth v. Bennett*, 593 Pa. 382, 930 A.2d 1264, 1267 (2007) (stating PCRA time limitations implicate our jurisdiction and may not be altered or disregarded to address the merits of the petition); *Commonwealth v. Johnson*, 803 A.2d 1291, 1294 (Pa.Super.2002) (holding the Superior Court lacks jurisdiction to reach merits of an appeal from an untimely PCRA petition). Under the PCRA, any petition for post-conviction relief, including a second or subsequent one, must be filed within one year of the date the judgment of sentence becomes final, unless one of the following exceptions set forth in 42 Pa.C.S. § 9545(b)(1)(i)-(iii) applies:

(b) **Time for filing petition.—**

(1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:

(i) the failure to raise the claim previously was the result of interference by government officials with the presen-

---

*mownealth v. Grazier*, 552 Pa. 9, 713 A.2d 81 (1998), to determine if Appellant was proceeding *pro se* knowingly, intelligently, and

voluntarily. After conducting a *Grazier* hearing, the PCRA court granted Appellant leave to proceed *pro se* on appeal.

tation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1)(i)-(iii). Any petition attempting to invoke one of these exceptions "shall be filed within 60 days of the date the claim could have been presented." 42 Pa.C.S. § 9545(b)(2).

Here, Appellant's judgment of sentence became final on June 24, 1974.[5] *See* 42 Pa.C.S. § 9545(b)(3) (stating that a judgment of sentence becomes final at the conclusion of direct review or the expiration of the time for seeking the review); *Commonwealth v. Owens*, 718 A.2d 330, 331 (Pa.Super.1998) (directing that under the PCRA, petitioner's judgment of sentence becomes final ninety days after our Supreme Court rejects his or her petition for allowance of appeal since petitioner had ninety additional days to seek review with the United States Supreme Court). Thus, Appellant's petition filed over 30 years after his judgment of sentence became final is patently untimely, and we must assess whether he has pleaded and proven the applicability of any of the above-stated exceptions.

In Appellant's amended PCRA petition, he alleged, *inter alia*, that he received "new evidence" in the form of an affidavit signed by Jerome Watson and dated March 6, 2008. In that affidavit, attached to Appellant's petition as "Exhibit C," Watson claimed that he fabricated his testimony that Appellant had confessed to shooting the victim. Appellant filed his *pro se* PCRA petition within 60 days of receiving Watson's March 6, 2008 affidavit.[6] *See* 42 Pa.C.S. § 9545(b)(2).

While his petition was pending, Appellant received a second signed affidavit from Watson, this one dated July 24, 2011. He attached that affidavit to his counseled amended PCRA petition as "Exhibit D." In the July 24, 2011 affidavit, Watson claimed that the Commonwealth coerced him into testifying falsely at Appellant's trial by "threaten[ing] to send [him] up state to jail for a long time" if he did not comply. Exhibit D at 1 (unnumbered pages). Watson also stated that after he testified, he "was treated favorably by the police, prosecutors and the courts, when dealing with the outstanding felony cases [he] had at the time in 1971 and with some [cases he] would get arrested for later." *Id.* Additionally, Watson claimed that in several cases, the Commonwealth "helped [him] to avoid jail" or "get light sentences...." *Id.*

---

**5.** Technically, Appellant's judgment of sentence became final on Sunday, June 23, 1974. However, whenever the last day of any time period referred to in a statute falls on a Sunday, we omit that day from the computation. 1 Pa.C.S. § 1908.

**6.** At the bottom of Watson's March 6, 2008 affidavit, it appears that prison authorities noted that the document was delivered to Appellant on Friday, March 14, 2008, making his May 9, 2008 petition timely in regard to section 9545(b)(2). Neither the PCRA court nor the Commonwealth dispute that Appellant's petition was filed within 60 days of his receiving Watson's affidavit.

After receiving Watson's affidavits, Appellant "immediately commenced a diligent search for the Notes of Testimony relating to both Watson's and Diggs' sentencings [*sic* ]." Appellant's Amended Petition, 11/4/11, at 3. Appellant claimed that through this search, he discovered Diggs' sentencing transcript, which revealed the following statements:

[The Commonwealth]: If your Honor please, I am representing the Commonwealth on both of these guilty pleas that were taken before Your Honor. Mr. Diggs pleaded guilty on one case September 24, 1971, to accessory after the fact of murder, and on the other case it appears Mr. Diggs also pleaded guilty on September 24, 1971, where he pleaded guilty to accessory after the fact.

Now, on the case that he pleaded guilty to involving Bill of Indictment 1211 of May Term, 1971, that is a case where there were co-defendants, one of whom was Clarence Davis. Mr. Diggs, from my understanding, did testify for the Commonwealth in that case, and of course kept his part of the agreement that he would testify.

. . .

[The Court]: Now, the agreement on May Term, 1971, No. 1211, was for probation?

[Mr. Diggs' Counsel]: Yes, sir.

[The Commonwealth]: Yes, sir

. . . .

[The Court]: As a condition of the probation on Bill 1211, I will require that the defendant keep his agreement already made with the respect to testifying on behalf of the Commonwealth.

See Appellant's Amended Petition, 11/4/11, Exhibit A (quoting N.T. Michael Diggs Sentencing, 5/17/73, at 2, 6–7).

Appellant also attached to his amended petition the transcript of Jerome Watson's sentencing proceeding. *See* Appellant's Amended Petition, 11/4/11, Exhibit B. There, Watson stated that he "turned state evidence against Clarence Davis" and "was forced to testify against [him]." *Id.* Exhibit B (quoting N.T. Jerome Watson Sentencing, 5/2/73, at 15).

Based on Watson's recantation, and the evidence that the Commonwealth concealed "sentencing agreements" with both Watson and Diggs, Appellant alleged that his petition satisfied the exceptions set forth in section 9545(b)(1)(i) and (ii).

The PCRA court disagreed. In its Pa. R.A.P. 1925(a) opinion, the court explains that because the evidence of Watson's and Diggs' deals with the Commonwealth was first proffered in open court at their individual sentencing hearings, that evidence was a matter of public record that Appellant could have discovered earlier had he exercised due diligence. *See* PCRA Court Opinion, 1/11/13, at 6–7 (stating that "[c]ourt proceedings are public records available via an exercise of due diligence") (citing *Commonwealth v. Hawkins*, 598 Pa. 85, 953 A.2d 1248, 1255 (2006) (noting that testimony offered at a public sentencing hearing was a matter of public record ascertainable in the exercise of due diligence)).

Likewise, in regard to Watson's recantation, the court emphasized that according to Watson's affidavit, he first informed the court of his perjury at the trial of "Chuck Logan." *See id.* at 8. Namely, Watson's affidavit stated:

At trial in 1974, before Judge Curtis Carson, Defense Counsel Benjamin Johnson was the lawyer for Chuck Logan. I told the Judge I was under the influence of drugs, and the statement I made was not true. They decided not to use me as a witness in Chuck Logan's trial.

Appellant's Amended Petition, 11/4/11, Exhibit C. Despite the fact that the PCRA court "was unable to locate transcripts of 'Chuck Logan's' trial from 1974," the court nevertheless concluded that Appellant could have obtained this public information earlier had he exercised due diligence. *Id.*

■ On appeal, Appellant contends that the PCRA court erred in determining that a timeliness exception did not apply to his claims. We are compelled to agree. While *Hawkins* does stand for the proposition that transcripts of court proceedings are public record, under the specific facts of this case, we cannot agree with the PCRA court that Appellant failed to exercise due diligence in not discovering those transcripts earlier.

First, both Watson and Diggs took the stand at Appellant's trial and denied having made any deals with the Commonwealth. For instance, when Jerome Watson was questioned about any agreements he made with the Commonwealth, he stated as follows:

> [Defense Counsel]: Isn't the truth that what happened was that you offered to give information regarding other matters in exchange for some leniency towards yourself in certain other matters?
>
> [Watson]: No.
>
> [Defense Counsel]: You mean you were asked about this case? Were you brought in to be asked about this case?
>
> [Watson]: No, I volunteered information.
>
> [Defense Counsel]: You volunteered about this case when you were brought in on something else?
>
> [Watson]: Right.
>
> . . .
>
> [Defense Counsel]: And, you just volunteered out of the clear blue sky to give information—
>
> [Watson]: Right.

> [Defense Counsel]:—on an additional case, and this is because of your strong sense of civic duty?
>
> [Watson]: Right.

N.T. Trial, 7/12/72–7/17/72, at 70–72.

During Diggs' testimony, the parties stipulated that he had already pled guilty to the crime of accessory after the fact and was then awaiting sentencing. Diggs was questioned by defense counsel as follows:

> [Defense Counsel]: When did you first become aware that you would have to testify in this case?
>
> [Diggs]: Last Tuesday or Wednesday, I think.
>
> [Defense Counsel]: And were you told why you have to testify?
>
> [Diggs]: No.
>
> [Defense Counsel]: Weren't you told that the sentence that you would get would depend on how well you cooperated in the trial of Clarence Davis?
>
> [Diggs]: No.
>
> . . .
>
> [Defense Counsel]: Isn't it true that you have been told that you will not be sentenced until after Clarence Davis' case is concluded and you have testified in that case?
>
> [Diggs]: No.

N.T. Trial, 7/18/72–7/19/72, at 214–216.

■ At no point during the testimony of either witness did the Commonwealth interject to clarify that a deal or leniency was offered to either Watson and/or Diggs. Therefore, Appellant had no reason to seek out transcripts of those witnesses' sentencing hearings in unrelated cases to look for evidence of such deals. To conclude otherwise would suggest that Appellant should have *assumed* the Commonwealth's witnesses were committing perjury, and the Commonwealth was improperly permitting them to do so. Due

diligence does not require a defendant to make such unreasonable assumptions. *See Commonwealth v. Selenski*, 606 Pa. 51, 994 A.2d 1083, 1089 (2010) (defining the due diligence required by the Commonwealth in Pa.R.Crim.P. 600 issues as "fact-specific, to be determined case-by-case; it does not require perfect vigilance and punctilious care, but merely a showing that the Commonwealth has put forth a reasonable effort").

Instead, Appellant's efforts were adequately diligent under the circumstances of this case. After receiving Watson's affidavit indicating that Watson had received lenient treatment by the Commonwealth in exchange for his testimony, Appellant acquired the transcripts of Watson's sentencing proceeding. Appellant also acquired the transcripts of Diggs' sentencing proceeding, evincing that Appellant acted diligently in suspecting that the Commonwealth may have also concealed a deal offered to Diggs. Such efforts by Appellant amounted to due diligence in ascertaining this claim. Therefore, Appellant has proven the applicability of the governmental interference exception under section 9545(b)(1)(i).

Likewise, Appellant also acted with sufficient diligence in discovering Watson's perjury. Attached to his amended PCRA petition, Appellant proffered affidavits from several friends and family members who claimed that they attempted to locate Watson after Appellant's trial in order to convince Watson to admit that he lied on the stand. However, Watson ostensibly could not be found. Thus, Appellant had no proof of Watson's perjury until he received Watson's affidavit in March of 2008. Unlike the PCRA court, we decline to conclude that Appellant could have discovered proof of Watson's perjury earlier had he obtained the transcript of "Chuck Logan's" trial. The PCRA court itself attempted to acquire that transcript and was unsuccessful. It would be unreasonable to expect a *pro se* prisoner such as Appellant to do that which a trial court could not.

■ In sum, Appellant exercised due diligence in discovering the evidence of Watson's recantation, and that the Commonwealth withheld deals it made with Watson and Diggs.[7] Appellant also filed his *pro se* petition within 60 days of receiving Watson's initial affidavit that instigated Appellant's discovery of all of these claims. Accordingly, Appellant has proven the applicability of the timeliness exceptions contained in sections 9545(b)(1)(i) and (ii). Therefore, we remand for the PCRA court to conduct an evidentiary hearing, assess the merits of these claims, and determine if Appellant is entitled to a new trial.

■ Before concluding, we note that Appellant attempts to raise several other arguments involving the Commonwealth's failure to turn over evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). For instance,

7. We note that in contending that Appellant's petition was untimely, the Commonwealth incorrectly focuses on the merits of Appellant's underlying claims. For instance, the Commonwealth avers that Appellant's petition should be deemed untimely because he has failed to demonstrate that the 'newly discovered evidence' would have changed the outcome of his trial. However, an after-discovered evidence claim and the timeliness exception based on previously unknown facts are distinct, and the issues are analyzed differently. *Commonwealth v. Bennett*, 593 Pa. 382, 930 A.2d 1264, 1270–72 (2007). Thus, the relative merit of Appellant's underlying PCRA claims is not the issue when determining whether his PCRA petition satisfies the after-discovered fact exception. Rather, the question of whether he met that exception is evaluated pursuant to the statutory requirements of 42 Pa.C.S.A. § 9545(b)(1)(ii) and (b)(2). As we have explained, Appellant satisfied those requirements in the PCRA court.

Appellant claims the Commonwealth "withheld critical crime scene measurements that were taken at the time of the incident." Appellant's Brief at 30. He also maintains that the Commonwealth failed to disclose that Dr. Robert Segal of the Philadelphia Medical Examiner's Office, who testified regarding the autopsy of the victim, was not the medical examiner who actually conducted that autopsy. However, Appellant does not specify how or when he discovered this withheld evidence in order to prove the applicability of any exception to the PCRA timeliness requirement.

■ Finally, Appellant argues that he discovered "new evidence," previously withheld by the Commonwealth, that "three (3) detectives, [ ] Patterson, Wade and Ross[ ], who testified at [Appellant's] suppression hearing and at trial," acted unlawfully in interrogating Appellant's co-defendant. Appellant's Brief at 53. Appellant contends that had the Commonwealth disclosed this evidence, Appellant could have used it to impeach these detectives' testimony at trial. *Id.* From what we can ascertain from Appellant's rambling and confusing argument, he discovered proof of the detectives' illegal interrogation of his co-defendant when he obtained a transcript of his co-defendant's suppression hearing. Appellant asserts that "[t]his transcript was inadvertently discovered recently as petitioner's family searched the archives for his co-defendant's 1974 suppression hearing transcript." *Id.* at 54. Appellant's argument is not specific enough to permit this Court to determine when, exactly, he discovered this "new evidence," and that his *pro se* PCRA petition was filed within 60 days

thereof. Accordingly, he has failed to prove that any exception to the PCRA's one-year time-bar applies to this claim.

Therefore, on remand, the PCRA court need only assess Appellant's assertions regarding Watson's recantation, and the Commonwealth's withholding of deals made in exchange for the testimony of Watson and Diggs.[8]

Order vacated. Case remanded for further proceedings. Jurisdiction relinquished.

---

8. During the pendency of this appeal, Appellant filed two *pro se* motions with this Court, one entitled, "Motion for Default Judgment Pursuant to PA.R.A.P., Rule 2118," and one entitled, "Motion for Leave of Court to File Subsequent Documents." After reviewing these motions, we deny them both.