J-A24021-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| SAMUEL FRANK MARRERO-NARDO SR. | : | |
| | : | No. 1162 MDA 2024 |
| Appellant | : | |

Appeal from the PCRA Order Entered August 2, 2024
In the Court of Common Pleas of Lebanon County Criminal Division at
No(s):  CP-38-CR-0000026-2016

BEFORE:  DUBOW, J., KUNSELMAN, J., and BECK, J.

MEMORANDUM BY DUBOW, J.:                    **FILED: DECEMBER 8, 2025**

Appellant, Samuel Frank Marrero-Nardo, Sr., appeals from the August 2, 2024 order entered in the Lebanon County Court of Common Pleas dismissing his serial petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-46, as untimely.  After careful review, we reverse and remand for further proceedings.

This case arises from the sexual and indecent assaults committed by Appellant against two minor girls between May 2004 and May 2005.  Both victims testified at Appellant's trial, as did, *inter alia*, Appellant's son, and Luis Figueroa,[1] who was an inmate in the Lebanon County Correctional Facility with Appellant in January 2016.  Mr. Figueroa testified that Appellant had told him

---

[1] Mr. Figueroa is sometimes referred to in the record as Luis Figueroa-Pacheco.

that when he was staying at a house with a mother and two girls, he had sex regularly with the older girl and rubbed the younger girl's vagina under her clothes, and that if the girls reported what happened, he would blame it on his son. N.T. Trial, 5/3/17, at 76-78, 80-83, 90-91.

At the time of Appellant's trial, Mr. Figueroa had two separate criminal cases pending.[2] Appellant's counsel cross-examined Mr. Figueroa extensively concerning the charges pending against him and Mr. Figueroa's desire for the court to send him to a drug rehabilitation facility and to avoid being sent to state prison because he was afraid of being labeled a snitch owing to his testifying at Appellant's trial. *Id.* at 86-90, 92-93. Mr. Figueroa testified that the Commonwealth did not promise or guarantee anything in exchange for his testimony. *Id.* at 76, 79. He also testified that the only reason he had not been sentenced at the time of Appellant's trial was because sentencing had been postponed until after he testified. *Id.* at 89-90. He testified that he was not expecting any consideration from the district attorney's office for his testimony, but that he was "looking for some help." *Id.* Through this cross-examination and stipulation of the parties, the jury learned that the day after Mr. Figueora reported to authorities what he contended Appellant had told him, he was released from the Lebanon County Correctional Facility and that the court did, in fact, subsequently send Mr. Figueroa to a rehabilitation facility instead of prison. *Id.* at 87-88, 183.

---

[2] One case, No.1459-2016 involved felony Retail Theft charges and the other, No. 324-2016, involved Possession of Drug Paraphernalia.

In addition to live testimony, the Commonwealth also introduced in evidence two Facebook messages Appellant sent to one of the victims. In one of the messages Appellant stated, among other things, "i feel so incomplete with you cause i was so nervous to have sex with you back then" Commonwealth Exh. 1; *see also* N.T. Trial, 5/3/17, at 20-21.

In its closing argument, the Commonwealth reminded the jury, with respect to Mr. Figueroa's testimony, to "keep in mind that no promises were made to him. He's hoping, I'm sure, but he was very clear that no one has ever made him any promises or guarantees." N.T. Trial, 5/4/17, at 36.

The jury convicted Appellant, and, on August 30, 2017, the trial court sentenced him to an aggregate term of 92 months to 17 years of imprisonment. This Court affirmed Appellant's judgment of sentence and, on June 10, 2019, the Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal. *Commonwealth v. Marrero-Nardo*, 203 A.3d 349 (Pa. Super. 2018) (non-precedential decision), *allocatur denied*, 214 A.3d 229 (Pa. 2019).

Appellant filed a timely first PCRA petition in which he claimed, *inter alia*, that his trial counsel had been ineffective for failing to request a jury instruction concerning open criminal charges against Mr. Figueroa. On April 13, 2021, the PCRA court denied Appellant's petition. On May 23, 2022, this Court affirmed the dismissal of Appellant's petition, concluding that Appellant could not prove that his counsel's actions or inactions prejudiced him because counsel thoroughly explored Mr. Figueroa's possible bias, the court properly

- 3 -

instructed the jury on bias, and the Commonwealth presented ample evidence beyond Mr. Figueroa's testimony to support Appellant's conviction. *Commonwealth v. Marrero-Nardo*, 279 A.3d 1269 (Pa. Super. 2022) (non-precedential decision).

On August 21, 2023, Appellant filed the instant PCRA petition in which he averred that he retained counsel in 2023 to assist him in challenging his convictions and counsel subsequently obtained several transcripts from the 2017 criminal proceedings against Mr. Figueroa. He asserted that from those transcripts he learned that the Commonwealth had violated its duty to disclose evidence under *Brady v. Maryland*, 373 U.S. 83 (1963). In particular, Appellant claimed that the Commonwealth failed to disclose that: (1) it had offered Mr. Figueroa a negotiated guilty plea for probation on one of the cases open at the time of Appellant's trial, that Mr. Figueroa had accepted that plea, and that, at the time of Appellant's trial, Mr. Figueroa was awaiting sentencing; and (2) that Mr. Figueroa had "some sort of agreement or understanding" with the Commonwealth regarding his remaining open charge. PCRA Petition, 8/21/23, at 3-4.

In support of these claims, Appellant attached as an exhibit transcripts from Mr. Figueroa's May 8, 2017 plea and sentencing hearing at which the same Assistant District Attorney ("ADA") that prosecuted Appellant's case represented the Commonwealth. At the hearing, the following transpired:

> [Figueroa's Counsel]   Your Honor, the plea agreement on Docket 324 of 2016 was for probation. Your honor, the plea agreement on Docket 1459 of 2016 is the

> Commonwealth would amend Felony 3 to a Misdemeanor 1 with a standard range of 1 to 9 months, and the Commonwealth would agree to a mitigated range sentence of global probation on both dockets with the caveat also in the plea that if Mr. Figueroa[] violates the terms of the probation he would be resentenced to a state sentence. I ask Your Honor to accept the plea agreements in both cases and sentence Mr. Figueroa[] accordingly.
>
> ***
>
> [ADA] . . . As you are aware, Mr. Figueroa did testify on behalf of the Commonwealth. It was a case involving two girls who are now adults but were victims at the time that they were children. And while he was incarcerated on a violation[, Mr. Figueroa] was placed in Lebanon County Correctional Facility where he had conversations with that [d]efendant about the abuse. I think it was very helpful testimony in that both of these girls really struggle with significant details because the abuse happened 12 plus years ago. So I do believe that his testimony was helpful. And as a result that's really kind of how we evolved into this plea offer.

PCRA Petition, 8/21/23, at Exh. C (Figueroa Sentencing Hr'g, 5/8/17, at 8-9).

Appellant conceded that this PCRA petition was untimely and invoked the governmental interference and newly-discovered facts exceptions to the PCRA's jurisdictional time-bar.[3]

On January 4, 2024, the PCRA court held a hearing limited to the issue of the applicability of the exceptions to the PCRA's time-bar. Counsel specifically focused on whether Appellant acted with due diligence in bringing his claim for collateral relief. Appellant's counsel argued that Appellant acted promptly in filing the instant petition when he learned in 2023, after reading

_____

[3] 42 Pa.C.S. § 9545(b)(1)(i)-(ii).

- 5 -

the 2017 transcripts from Mr. Figueroa's proceedings, that the Commonwealth had failed to correct Mr. Figueroa's perjurious trial testimony, and then itself argued in closing, that it had not offered him any leniency in exchange for his testimony against Appellant. Appellant argued that he had no reason to know that the information counsel gleaned from the transcripts existed prior to 2023. In particular, Appellant's counsel argued that

> This wasn't a situation where [Appellant] was negligent or wasn't paying attention. He has been trying. As we have gone through this case – and before I got involved – the absence of [the deal between the Commonwealth and Mr. Figueroa] has shown up again and again. [Appellant] has shown me his notes. You know, there was – one of the claims was about this – and this is in the original PCRA – ineffectiveness for failing to request a jury instruction on [Mr. Figueroa's] pending criminal charges.
>
> One of the ways that that was dealt with was he adequately cross-examined him, but it certainly would have been a very different situation had it been disclosed to the jury that there was an understanding, however unfirm [*sic*] or however nuanced it may have been it would have been handled completely different.
>
> So that is something that has kind of been in this case as it has gone through trial, direct appeal, and then through the initial PCRA.

N.T. PCRA Hr'g, 1/4/24, at 14-15.

Notably, Appellant's counsel did not explain why Appellant could not have obtained the 2017 transcripts earlier with the exercise of due diligence; rather, he argued only that, pursuant to **Commonwealth v. Davis**, 86 A.3d 883, 890-91 (Pa. Super. 2014), discussed *infra*, that he was under no obligation to do so.

In response, the Commonwealth argued, *inter alia*, that the issue of an alleged deal between Mr. Figueroa and the Commonwealth "has been litigated to death in this case in other times and in other matters before this [c]ourt and other courts – appellate courts."  N.T. at 18.

The PCRA court took the matter under advisement, and following its consideration of additional briefing by the parties, on August 2, 2024, dismissed Appellant's petition as untimely.

This timely appeal followed.[4]

Appellant raises the following three issues on appeal:

1. Whether the PCRA [c]ourt erred by concluding that [Appellant] did not satisfy the newly discovered [fact] or governmental interference exceptions to the [PCRA's] one-year jurisdictional time bar, thereby dismissing his second or subsequent petition for relief?

2. Whether the PCRA [c]ourt erred in concluding that [Appellant] failed to act with diligence in discovering the Commonwealth['s] violation of ***Brady***[] in contravention of this Court's decision in []***Davis***[]?

3. Whether the PCRA [c]ourt unreasonably applied the Due Process Clause and/or ***Brady***[] by imposing an affirmative duty of due diligence to discover ***Brady*** violations on [Appellant] and/or his legal team?

Appellant's Brief at 9.[5]

---

[4] Appellant filed a court-ordered Pa.R.A.P. 1925(b) statement.  The PCRA court did not file a responsive Rule 1925(a) opinion.

[5] Appellant's brief also includes a section of argument titled "This Court Should Grant the Request for Mandamus and Compel the Lebanon County Court of Common Pleas to Forward the Remaining Exhibits to this Court."  Appellant's Brief at 30-31.  This section of argument does not correspond with any of
*(Footnote Continued Next Page)*

We review a court's denial of a PCRA petition to determine whether the record supports the PCRA court's findings of fact and "whether its conclusions of law are free from legal error." *Commonwealth v. Small*, 238 A.3d 1267, 1280 (Pa. 2020). While this Court defers to the PCRA court's factual findings and credibility determinations if supported by the record, we review its legal conclusions *de novo*. *See id.* "The scope of our review is limited to the findings of the PCRA court and the evidence of record, which we view in the light most favorable to the [prevailing] party." *Id.*

The timeliness of a PCRA petition is a jurisdictional requisite. *Commonwealth v. Hackett*, 956 A.2d 978, 983 (Pa. 2008). Pennsylvania law is clear that no court has jurisdiction to hear an untimely PCRA petition. *Commonwealth v. Robinson*, 837 A.2d 1157, 1161 (Pa. 2003). In order to obtain relief under the PCRA, a petition must be filed within one year from the date the judgment of sentence became final. 42 Pa.C.S. § 9545(b)(1). Appellant concedes that his petition is facially untimely.

Pennsylvania courts may consider an untimely PCRA petition, however, if the petitioner pleads and proves one of the three exceptions to the time-bar set forth in Section 9545(b)(1). Any petition invoking a timeliness exception must be filed within one year of the date the claim could have been presented. 42 Pa.C.S § 9545(b)(2). Here, Appellant attempts to invoke the governmental

---

Appellant's questions presented in violation of Pa.R.A.P.2116(a) and 2119(a), and we, therefore, decline to consider it.

interference and newly discovered facts exceptions provided in Section 9545(b)(1)(i) and (ii).

The governmental interference exception invoked by Appellant requires the petitioner to prove that "the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States[.]" *Id.* § 9545(b)(1)(i). The petitioner must also plead and prove that he could not have obtained the information earlier with the exercise of due diligence. *Commonwealth v. Abu-Jamal*, 941 A.2d 1263, 1268 (Pa. 2008). As the Supreme Court has explained, a *Brady* violation may constitute governmental interference; however, an appellant may not "begin with a discussion of the merits of a *Brady* claim; rather [he] must begin with a discussion of why the instant petition was timely filed." *Commonwealth v. Stokes*, 959 A.2d 306, 310 (Pa. 2008).

To satisfy the newly discovered facts exception, a petitioner must plead and prove "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence." 42 Pa.C.S. § 9545(b)(1)(ii). Our Supreme Court has held that this exception "does not require any merits analysis of the underlying claim." *Commonwealth v. Bennett*, 930 A.2d 1264, 1271 (Pa. 2007). Rather the exception merely requires the petitioner to plead and prove two elements: "1) the facts upon which the claim was predicated were unknown and 2) could not

have been ascertained by the exercise of due diligence." *Id.* at 1272 (internal quotation marks and emphasis omitted), citing 42 Pa.C.S. § 9545(b)(1)(ii).

As noted above, both exceptions invoked by Appellant require him to prove that he could not have uncovered the information forming the basis of his claim earlier with the exercise of due diligence. Due diligence requires a petitioner to make reasonable efforts to uncover facts that may support a claim for collateral relief. *Commonwealth v. Brensinger*, 218 A.3d 440, 449 (Pa. Super. 2019) (*en banc*). A petitioner must explain why he could not have learned the new facts earlier by exercising due diligence. *Commonwealth v. Breakiron*, 781 A.2d 94, 98 (Pa. 2001).

In each of his issues, Appellant claims that the PCRA court erred in finding that he did not satisfy the governmental interference or newly-discovered facts exception to overcome the PCRA's jurisdictional time-bar. Appellant's Brief at 31-56. In particular, Appellant contends that the Commonwealth's suppression of Mr. Figueroa's plea deal constitutes a *Brady* violation that the Commonwealth prevented him from raising earlier. *Id.* at 48-49. He further contends that the evidence his counsel uncovered from his review of the transcripts from Mr. Figueroa's criminal proceedings constitutes new evidence and that, pursuant to *Davis*, *supra*, he acted with the requisite due diligence to uncover.[6] *Id.* at 50-56.

---

[6] He also contends that *Davis* applies "with equal force to the [due diligence requirement] of the government interference exception." Appellant's Brief at 53.

In ***Davis***, the appellant filed a facially untimely second PCRA petition claiming that, in 2008, he had discovered new evidence that the Commonwealth had withheld evidence of deals it had made with two witnesses in exchange for their testimony at his 1972 trial. ***Davis***, 86 A.3d at 886, 888. As in the instant case, the appellant invoked the newly-discovered facts and governmental interference exceptions in an effort to overcome the PCRA's one-year jurisdictional time bar. ***Id.*** at 889. The PCRA court dismissed the appellant's petition, filed more than 30 years after his judgment of sentence became final, as untimely, finding that because the evidence of the witnesses' deals with the Commonwealth was first proffered in open court at their sentencing hearings, the evidence was public record and the appellant could have discovered it earlier with the exercise of due diligence. ***Id.***

This Court disagreed. ***Id.*** at 890. We explained that there was no reason for the appellant "to seek out transcripts of th[e] witnesses' sentencing hearings in unrelated cases to look for evidence of [] deals" with the Commonwealth. ***Id.*** We held that "[t]o conclude otherwise would suggest [the a]ppellant should have **assumed** the Commonwealth's witnesses were committing perjury, and the Commonwealth was improperly permitting them to do so. Due diligence does not require a defendant to make such unreasonable assumptions." ***Id.*** at 890-91 (emphasis in original).

Instantly, the PCRA court found the facts in ***Davis*** distinguishable and Appellant's reliance on ***Davis*** misplaced. We disagree.

- 11 -

Following our review, we conclude that *Davis* is controlling. Here, as in *Davis*, subsequent review of transcripts in unrelated matters revealed that both Mr. Figueroa and the Commonwealth falsely represented at Appellant's trial that the Commonwealth had not offered Mr. Figueroa leniency in exchange for his incriminating testimony against Appellant. Pursuant to *Davis*, Appellant had no duty to assume that Mr. Figueroa or the Commonwealth were being untruthful and to seek out the transcripts of Mr. Figueroa's sentencing hearings. We, therefore, conclude, like the *Davis* Court, that Appellant's efforts in obtaining the 2017 transcripts in 2023 "were adequately diligent." *Id.* at 891.

Having found that Appellant acted with the requisite due diligence to bring his PCRA claim, we consider whether he demonstrated that the newly-discovered facts exception applies by proving that the facts upon which he based his claim were previously unknown to him. Here, the newly-discovered facts are that Mr. Figueroa and the Commonwealth both falsely represented that the Commonwealth had not offered Mr. Figueora lenient treatment in exchange for his testimony against Appellant and that the Commonwealth failed to correct Mr. Figueroa's false testimony. We conclude that these facts were previously unknown to Appellant and, therefore, that Appellant has

successfully pleaded and proved the applicability of the newly-discovered facts exception to the PCRA's time bar.[7]

We next consider the merits of the claims Appellant raised in his petition, *i.e.*, that he is entitled to PCRA relief because the evidence of Mr. Figueroa's agreement with the Commonwealth constituted both after-discovered evidence and a violation of ***Brady***.

After-Discovered Evidence

In order to obtain relief based on after-discovered evidence, a petitioner must show that the evidence:

> (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted.

***Commonwealth v. Williams***, 215 A.3d 1019, 1024 (Pa. Super. 2019) (citation omitted).

Following our review, we conclude that Appellant is not entitled to relief on his after-discovered evidence claim. In particular, we find that the evidence of Mr. Figueroa's deal with the Commonwealth could only have been used for purposes of impeaching Mr. Figueroa's credibility. Accordingly, this evidence cannot form the basis of a successful after-discovered evidence claim.

---

[7] In light of our conclusion that the newly-discovered facts exception to the PCRA's jurisdictional time bar applies, we need not consider the applicability of the governmental interference exception.

*Brady* Violation

"Under ***Brady***, the prosecution's failure to divulge exculpatory evidence is a violation of a defendant's Fourteenth Amendment due process rights. To establish a ***Brady*** violation, a defendant is required to demonstrate that exculpatory or impeaching evidence, favorable to the defense, was suppressed by the prosecution, to the prejudice of the defendant." ***Commonwealth v. Cam Ly***, 980 A.2d 61, 75 (Pa. 2009) (citation, quotation marks, and brackets omitted). A defendant has the burden of proof to demonstrate that the Commonwealth willfully or inadvertently suppressed or withheld exculpatory evidence. ***Commonwealth v. Bagnall***, 235 A.3d 1075, 1086 (Pa. 2020).

A defendant must also demonstrate that the withheld or suppressed evidence was material; a court must base its determination of materiality on considerations of the cumulative or collective effect of the suppressed evidence. ***Commonwealth v. Abdul-Salaam***, 42 A.3d 983, 984-85 (Pa. 2012). Evidence is material under ***Brady*** if there exists a reasonable probability that the outcome of the trial would have been different if the Commonwealth had disclosed the evidence. ***Commonwealth v. Natividad***, 200 A.3d 11, 26 (Pa. 2019). "[T]he mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish materiality in the constitutional sense." ***Cam Ly***, 980 A.2d at 76 (citation and internal quotation marks omitted).

- 14 -

Whether a deal existed between Mr. Figueroa and the Commonwealth, whether, if it existed, the Commonwealth willfully suppressed or withheld its existence, and whether its existence is material are all questions of fact. Given that the PCRA court limited the hearing on Appellant's PCRA petition to the question of the petition's timeliness, we remand this matter to the PCRA court to develop a factual record regarding, and to determine the merits of, Appellant's claim that the Commonwealth committed a **Brady** violation.

Order reversed. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/8/2025