J-S71024-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| EDWARD MITCHELL | |
| Appellant | No. 782 MDA 2014 |

Appeal from the PCRA Order April 8, 2014
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s): CP-22-0002648-2000

BEFORE:  FORD ELLIOTT, P.J.E., PANELLA, J., and FITZGERALD, J.[*]

MEMORANDUM BY PANELLA, J.                    **FILED JANUARY 12, 2015**

Appellant, Edward Mitchell, appeals *pro se* from the order entered April 8, 2014, by the Honorable Andrew H. Dowling, Court of Common Pleas of Dauphin County, which denied Mitchell's petition filed pursuant to the Post Conviction Relief Act ("PCRA").[1]  We affirm.

A panel of this Court previously summarized the facts of this case on direct appeal as follows:

> Angel DeJesus (Mr. DeJesus) was killed in the early morning of July 5, 2000, in his taxicab at the intersection of Kittatinny and Hummel Streets in Harrisburg.  Jennifer McDonald (Ms. McDonald) went to a store around 4:30 a.m., shortly before the murder.  She observed [Mitchell] and his co-defendants, Kariem Eley (Eley) and Lester Eiland (Eiland), standing at the intersection of Kittatinny and Hummel Streets.  As Ms. McDonald

---

[*] Former Justice specially assigned to the Superior Court.
[1] 42 Pa.Cons.Stat.Ann. §§ 9541-9546.

was walking home about a minute and a half later, she saw Mr. DeJesus's cab pass her traveling toward the intersection. When she heard a loud noise, she looked back and saw Mr. DeJesus's cab stopped at the intersection with its brake lights on. Five or ten minutes after arriving home, Ms. McDonald heard police sirens.

Guadalupe Fonseca (Mr. Fonseca) was standing in front of his house on the morning of the murder and saw three African-American men standing near Mr. DeJesus's cab. He saw one of the men enter the cab and heard two gunshots. After the shots, the man got out of the cab and joined the other two men at the right side of the cab. Mr. Fonseca heard a third shot and saw the men departing to the north on Hummel Street. Rufus Hudson saw [Mitchell] and his co-defendants at the intersection before the shooting and witnessed them running across Hummel Street toward and abandoned house after Mr. DeJesus was shot.

Another taxicab driver in the area, Francisco Ramirez-Torres (Ramirez-Torres) was informed of the incident by a passenger named Eligio Contreras (Elijio). Ramirez-Torres went to the scene and called the police. Police officers found Mr. DeJesus alive but bleeding from the head. Two shell casings were found on the floor of the cab. A police officer found a third casing inside an air vent in the car. Mr. DeJesus died at the hospital following surgery. The evidence indicated that he had been shot three times in the head and neck with a .25-caliber handgun, at least once from a distance of less than a foot. Although Mr. DeJesus was known to carry a pouch to hold his money while he was working, it was not found on his person or in the cab, nor was any money found.

[Mitchell] and his co-defendants were arrested and held for trial. [Mitchell] made a statement to the police admitting that he had been firing guns before the murder with two other men near the location where Mr. DeJesus was shot. He stated that the group left the weapons in an abandoned house. Although police officers discovered several guns in the house, the .25-caliber handgun used to kill the victim was not found there.

*Commonwealth v. Mitchell*, 1658 MDA 2001 (Pa. Super., filed September 22, 2003) (unpublished memorandum at 1-3).

On August 10, 2001, Mitchell and his co-defendants were convicted of second degree murder, robbery, and conspiracy, and sentenced to aggregate terms of life imprisonment. On appeal, this court *sua sponte* vacated Mitchell's sentence as to the imposition of consecutive sentences for second-degree murder and robbery, which should have merged, and the Pennsylvania Supreme Court thereafter denied allocatur. At the conclusion of Mitchell's direct appeal, the case was remanded and on August 5, 2004, the trial court corrected Mitchell's sentence.

On November 26, 2004, Mitchell filed his first PCRA petition seeking a new trial on the basis of after-discovered evidence, which the PCRA court denied. A second timely PCRA petition followed on February 28, 2005, which the PCRA court similarly denied. On appeal, this Court affirmed the order denying PCRA relief. **See Commonwealth v. Mitchell**, 739 MDA 2007 (Pa. Super., filed August 19, 2008) (unpublished memorandum). During the pendency of Mitchell's second PCRA petition, Mitchell joined in a petition for PCRA relief filed by one of his co-defendants, also based upon alleged after-discovered evidence. On September 19, 2007, the PCRA court denied relief, and this Court affirmed that order on appeal. **See Commonwealth v.**

*Mitchell*, 1776 MDA 2007 (Pa. Super., filed October 20, 2008) (unpublished memorandum).[2]

On March 27, 2012, Mitchell filed the instant *pro se* PCRA petition – his fourth – in which he raised yet another allegation of after-discovered evidence. Attached to the PCRA petition was the unsworn recantation statement of Commonwealth witness Rufus Hudson. Also attached to the petition was the sworn affidavit of licensed investigator Wayne W. Schmidt, in which Schmidt attested that he watched Hudson read and sign the unsworn recantation affidavit in prison on March 2, 2012. Mitchell filed an amended PCRA petition on May 17, 2012, and on July 23, 2012, the PCRA court dismissed the petition without a hearing. On appeal, this Court issued a judgment order remanding the case and instructing the PCRA court to hold an evidentiary hearing on the reliability of the recantation testimony. *See Commonwealth v. Mitchell*, 1515 MDA 2012 (Pa. Super., filed April 4, 2013) (judgment order). The PCRA court conducted an evidentiary hearing on August 29, 2013, at which Rufus Hudson testified. On April 8, 2014, the PCRA court dismissed Mitchell's PCRA petition after concluding that Hudson's testimony was "not credible, not truly exculpatory and would not have likely

---

[2] Although the panel noted that this joint PCRA petition should technically have been held in abeyance pending the resolution of Mitchell's second PCRA petition, it declined to dismiss the appeal. *Id*.

led to a different verdict." PCRA Court Opinion, 4/8/14 at 4. This timely appeal followed.

On appeal, Mitchell argues that the PCRA court erred when it concluded that Hudson's recantation testimony was incredible, not exculpatory, and would not have likely led to a different verdict. *See* Appellant's Brief at 4.

"On appeal from the denial of PCRA relief, our standard and scope of review is limited to determining whether the PCRA court's findings are supported by the record and without legal error." *Commonwealth v. Edmiston*, 65 A.3d 339, 345 (Pa. 2013) (citation omitted), *cert. denied*, *Edmiston v. Pennsylvania*, 134 S. Ct. 639 (2013). "[Our] scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the PCRA court level." *Commonwealth v. Koehler*, 36 A.3d 121, 131 (Pa. 2012) (citation omitted). "[T]his Court applies a *de novo* standard of review to the PCRA court's legal conclusions." *Commonwealth v. Spotz*, 18 A.3d 244, 259 (Pa. 2011) (citation omitted).

Before we may address the merits of a PCRA petition, we must first consider the petition's timeliness because it implicates the jurisdiction of both this Court and the PCRA court. *See Commonwealth v. Williams*, 35 A.3d 44, 52 (Pa. Super. 2011) (citation omitted), *appeal denied*, 50 A.3d 121 (Pa. 2012). A PCRA petition must be filed within one year of the date

that the judgment of sentence becomes final. *See* 42 PA.CONS.STAT.ANN. § 9545(b)(1). "The PCRA timeliness requirements are jurisdictional in nature and, accordingly, a court cannot hear untimely PCRA petitions." *Commonwealth v. Flanagan*, 854 A.2d 489, 509 (Pa. 2004). As the PCRA petition at issue here was not timely, "the courts have no jurisdiction to grant [him] relief unless he can plead and prove that one of the exceptions to the time bar provided in 42 [PA.CONS.STAT.ANN.] § 9545(b)(1)(i)-(iii) applies." *Commonwealth v. Pursell*, 749 A.2d 911, 914-915 (Pa. 2000). *See also Commonwealth v. Wilson*, 824 A.2d 331, 335 (Pa. Super. 2003) (*en banc*) ("Since Appellant's PCRA petition is untimely, our review focuses on whether Appellant has pled and proven that one of the three limited exceptions to the timeliness requirements of the PCRA apply.").

Section 9545 provides, in relevant part, as follows.

**(b) Time for filing petition.—**

(1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not

have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

(2) Any petition invoking an exception provided in paragraph (1) shall be filed within 60 days of the date the claim could have been presented.

…

42 PA.CONS.STAT.ANN. § 9545(b).

Instantly, there is no dispute that Mitchell's petition is untimely. Thus, Mitchell must plead and prove one of the three enumerated statutory exceptions to the time-bar. As previously noted, Mitchell alleged in the *pro se* PCRA petition filed March 27, 2012, that he received "new evidence" under 42 PA.CONS.STAT.ANN. § 9545(b)(1)(ii) in the form of an affidavit signed by Rufus Hudson and dated March 2, 2012. In that unsworn affidavit attached to Mitchell's petition, Rufus claimed that he fabricated his testimony and that he "did not see Kari[e]m 'Mo' [Eley] or Lester 'Risha' Eiland with guns and did not see them running from the scene of the shooting." Affidavit of Rufus Hudson, 3/2/12. Mitchell filed his *pro se* PCRA petition within 60 days of receiving this new evidence. **See** 42 PA.CONS.STAT.ANN. § 9545(b)(2). Accordingly, we find that Mitchell has

complied with the timeliness exception contained in 42 PA.CONS.STAT.ANN. § 9545(b)(1)(ii).[3]

We proceed to address the merits of Mitchell's claim that he is entitled to a new trial based upon after-discovered evidence.

> To obtain relief based upon newly-discovered evidence under the PCRA, a petitioner must establish that: (1) the evidence has been discovered after trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict.

***Commonwealth v. D'Amato***, 856 A.2d 806, 823 (Pa. 2004) (citation omitted).

"We acknowledge that, as a general matter, recantation evidence is notoriously unreliable, particularly where the witness claims to have committed perjury." ***Id***. at 825 (citations omitted). ***See also***

---

[3] As this Court recently noted in ***Commonwealth v. Davis***, 86 A.3d 883 (Pa. Super. 2014),

> an after-discovered evidence claim and the timeliness exception based on previously unknown facts are distinct, and the issues are analyzed differently. ***Commonwealth v. Bennett***, 593 Pa. 382, 930 A.2d 1264, 1270-72 (2007). Thus, the relative merit of Appellant's underlying PCRA claims is not the issue when determining whether his PCRA petition satisfies the after-discovered fact exception. Rather, the question of whether he met that exception is evaluated pursuant to the statutory requirements of 42 Pa.C.S.A. § 9545(b)(1)(ii) and (b)(2).

***Id***., at 891 n.7. Thus, our conclusion that Mitchell has satisfied the timeliness exception based upon unknown evidence does not implicate our holding, discussed below, that the underlying after-discovered evidence claim is without merit.

*Commonwealth v. McNeil*, 487 A.2d 802, 807 n.4 (Pa. 1985) (opining that recantation evidence has often been recognized as one of the least reliable forms of after-discovered evidence). "[A]n appellate court may not interfere with the denial or granting of a new trial where the sole ground is the alleged recantation of state witnesses unless there has been a clear abuse of discretion." *Commonwealth v. Hammond*, 953 A.3d 544, 561 (Pa. Super. 2008) (citation omitted).

Here, Mitchell has established the first three prongs of the after-discovered evidence test. As previously noted, Mitchell did not discover Hudson's unsworn affidavit until after trial, and we are satisfied that he could not have done so prior to trial through reasonable diligence. Hudson's recantation statement is also not cumulative, nor is it being used solely to impeach credibility. However, we are constrained to agree with the PCRA court's conclusion that Mitchell cannot establish the fourth and final prong, in that the evidence would not likely compel a different verdict.

Initially, we note that a careful reading of Hudson's unsworn affidavit reveals that Hudson recants his trial testimony only insofar as it concerns his observation of co-defendants Eley and Eiland at the scene of the crime. Hudson states in the affidavit that he "did not see Kari[e]m 'Mo' [Eley] or Lester 'Risha' Eiland with guns and did not see them running from the scene of the shooting." Affidavit of Rufus Hudson, 3/2/12. Notably, Hudson does not recant his trial testimony that he observed Mitchell running from the

scene of the crime. Thus, the unsworn affidavit arguably does not even constitute recantation evidence pertaining to Mitchell's involvement in the crime.

Additionally, Hudson's testimony at the PCRA hearing still places Mitchell and his two co-defendants *at the scene of the crime*.[4] Although Hudson recanted his testimony that he observed Mitchell fire a gun and run from the scene of the crime, he unequivocally stated that he observed Mitchell and his co-defendants "in the vicinity of the cab" during the evening of the shooting, which Hudson clarified to mean "about 30" feet away from the cab. N.T., PCRA Evidentiary Hearing, 8/29/13 at 23-24. We are not

---

[4] The transcript of the PCRA hearing is not in the certified record. Moreover, our review of the record reveals that Mitchell did not even order a copy of the transcript, in violation of Pennsylvania Rule of Appellate Procedure 1911, relating to requests for transcripts. Ordinarily, this failure would result in waiver of Mitchell's claim on appeal. *See Commonwealth v. Preston*, 904 A.2d 1, 7 (Pa. Super. 2006) (*en banc*) ("In the absence of an adequate certified record, there is no support for an appellant's arguments and thus, there is no basis on which relief could be granted."). However, we note that a copy of the transcript is in Mitchell's reproduced record and the Commonwealth has not objected to that copy. Under these circumstances, we decline to find waiver and have elected to use the transcript provided in the reproduced record. *Accord Commonwealth v. Walls*, 926 A.2d 957, 959 n.1 (Pa. 2007) (relying on pre-sentence investigation report that appeared only in reproduced record where neither party challenged the validity of the report).

In so doing, we remind Mitchell that "the ultimate responsibility of ensuring that the transmitted record is complete rests squarely upon the appellant and not upon the appellate courts." *Preston*, 904 A.2d at 7.

convinced that this testimony, together with the unequivocal testimony of other trial witnesses placing Mitchell and his co-defendants at the cab directly prior to the shooting, would have compelled a different verdict at trial. We further note that the PCRA court explicitly found Hudson's recantation testimony, in general, to be incredible. *See Commonwealth v. Loner*, 836 A.2d 125, 135 (Pa. Super. 2003) (providing that a prerequisite to relief based upon a claim of recantation evidence is that "the evidence upon which the relief is sought must be credible to the trial court."). Consequently, we agree with the PCRA court that Hudson's recantation testimony does not entitle Mitchell to a new trial.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/12/2015

- 11 -