J-S41037-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| CHARLES B. CARRINGTON | : | |
| | : | |
| Appellant | : | No. 1306 EDA 2017 |

Appeal from the PCRA Order March 24, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0010404-2007

BEFORE:   GANTMAN, P.J., OLSON, J., and STEVENS*, P.J.E.

MEMORANDUM BY GANTMAN, P.J.:                **FILED SEPTEMBER 11, 2018**

Appellant, Charles B. Carrington, appeals from the order entered in the Philadelphia County Court of Common Pleas, which denied his first petition brought pursuant to the Post-Conviction Relief Act ("PCRA").[1]  We affirm.

In its opinion, the PCRA court correctly set forth the relevant facts and procedural history of this case.  Therefore, we have no need to restate them. We add that on May 1, 2017, the PCRA court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant filed a Rule 1925(b) statement on May 25, 2017.

Appellant raises the following issues for our review:

> WHETHER THE PCRA COURT VIOLATED PARAGRAPH (1) OF
> RULE 907 OF PA.R.CRIM.P. BY SUMMARILY DISMISSING
> [APPELLANT]'S     PCRA     PETITION     WITHOUT     [AN]

---

[1] 42 Pa.C.S.A. §§ 9541-9546.

---

\* Former Justice specially assigned to the Superior Court.

EVIDENTIARY HEARING, WHERE THERE WAS A GENUINE ISSUE OF MATERIAL FACT AS TO WHETHER [APPELLANT] WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL, WHEN TRIAL COUNSEL FAILED TO ASK FOR A CURATIVE INSTRUCTION FOLLOWING DENIAL OF HIS REQUEST FOR A MISTRIAL ON THE BASIS THAT THE PROSECUTION MADE IMPROPER COMMENTS DURING A LINE OF QUESTIONING THAT IMPLIED THAT HE INTIMIDATED A WITNESS, LAMAR ADAMS?

[WHETHER] THE [PCRA] COURT VIOLATED PARAGRAPH (1) OF RULE 907 OF PA.R.CRIM.P. BY DISMISSING APPELLANT'S PCRA PETITION WITHOUT [AN] EVIDENTIARY HEARING, WHERE THERE WAS A GENUINE ISSUE OF MATERIAL FACT AS TO WHETHER APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL, WHEN APPELLATE COUNSEL FAILED TO RAISE ON DIRECT APPEAL THE TRIAL COURT'S ABUSE OF DISCRETION IN DENYING TRIAL COUNSEL'S REQUEST FOR A MISTRIAL BASED ON PROSECUTORIAL MISCONDUCT WHERE [THE] PROSECUTOR[']S CLOSING COMMENTS [IMPLIED] THAT WITNESSES WERE FEARFUL OF TESTIFYING BECAUSE DEFENDANTS WERE DRUG DEALERS, WHEN THE JURY HEARD NO EVIDENCE CONCERNING WHAT BUSINESS THEY WERE IN?

(Appellant's Brief at 4).[2]

After a thorough review of the record, the briefs of the parties, the

_____

[2] The revisions to Pa.R.A.P. 1925(b) relaxed the bright-line waiver rule previously in place in criminal cases, under **Commonwealth v. Castillo**, 585 Pa. 395, 888 A.2d 775 (2005), so that we can address issues presented in an untimely filed Rule 1925(b) statement, without remand, if the trial court addressed the issue(s) on the merits. **See generally Commonwealth v. Burton**, 973 A.2d 428 (Pa.Super. 2009) (*en banc*). Here, the court entered an order on May 1, 2017, directing Appellant to file his Rule 1925(b) statement within 21 days. The order was entered on the docket and served on counsel on the same day. The statement was due on May 22, 2017. Appellant filed his statement on May 25, 2017. Nevertheless, the PCRA court addressed the merits of Appellant's claims, so we will not deem them waived. **See id.**

applicable law, and the well-reasoned opinion of the Honorable Sheila A. Woods-Skipper, we conclude that Appellant's issues merit no relief. The PCRA court opinion comprehensively discusses and properly disposes of the questions presented. (*See* PCRA Court Opinion, filed June 9, 2017, at 6-11) (finding: **(1)** assuming issue has arguable merit, Appellant did not establish that trial counsel's failure to request curative instruction was unreasonable and unduly prejudicial to Appellant; **(2)** trial court sustained defense counsel's objections to Commonwealth's closing remarks, which implied Appellant and his co-defendant were engaged in some unlawful business, struck remarks from record, and issued cautionary instructions to jury during and after closing to remove any prejudice resulting from improper comments of prosecutor; law presumes jury followed court's instructions; appellate counsel will not be considered ineffective for failing to pursue this claim on direct appeal, because claim lacks merit). The record supports the PCRA court's decision. Accordingly, we affirm on the basis of the PCRA court opinion.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/11/18

- 3 -

FILED

JUN 0 9 2017

Office of Judicial Records
Appeals/Post Trial

## IN THE COURT OF COMMON PLEAS
## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
## CRIMINAL TRIAL DIVISION

COMMONWEALTH OF PENNSYLVANIA :

                   v. :

    :    CP-51-CR-0010404-2007

CHARLES CARRINGTON
PP# 906755

DOCKET NO.: 1306 EDA 2017 :



CP-51-CR-0010404-2007 Comm. v Carrington, Charles B
Opinion

7958773871

## OPINION

Appellant, Charles Carrington, appeals the PCRA order that was entered in the Court of Common Pleas, Philadelphia County on March 24, 2017. Following a jury trial with co-defendant Rassan Richardson, appellant was found guilty of third degree murder, conspiracy and possession of an instrument of crime, and sentenced to an aggregate sentence of 21-42 years incarceration.[1] A summary of the evidence follows.

On January 4, 2007, at approximately 12:18 AM, Philadelphia Police Officer Brian Smith and his partner Officer Eric Tyler were preparing to begin their shift at the 12th Police District, 65th and Woodland Avenue in the City and County of Philadelphia, when they heard several radio calls of gunshots, and a person shot on the highway at 6516 Regent Street. They obtained a police vehicle, acknowledged to radio that they were responding, proceeded to the east side of the 6200 block of Regent Street, and worked their way over to 65th and Regent Street. As they proceeded down 6200 Regent, they observed a large crowd on the corner, huddled around someone lying on the ground next to a Jeep. They exited their patrol car and observed a male, later identified as Derrick Armstrong (Armstrong), on the ground between the curb and the Jeep, his back facing the

---

[1] 18 Pa.C.S. § 2502(c); 18 Pa.C.S. § 903; and 18 Pa.C.S. § 907, respectively. Appellant received 15-30 years incarceration for murder, 5-10 years incarceration for conspiracy and 1-2 years incarceration for PIC to run consecutively.

1

driver's door, his head facing the curb, in a fetal position. The male appeared to be bleeding from the abdomen, head and face. At approximately the same time, paramedics arrived and transported the victim to the Hospital of the University of Pennsylvania where he was pronounced dead.

The subsequent autopsy revealed that Armstrong's cause of death was multiple gunshot wounds. He suffered a gunshot wound to his left back that went through his left lung, his heart and his right lung, causing massive damage to both lungs and the heart and massive internal bleeding. A large caliber bullet was recovered from his chest wall. A second bullet entered his left buttock and exited through the upper left thigh causing hemorrhaging within the muscles of the buttock and left thigh. A third bullet entered the right buttock traveled through the bowel, the liver and the diaphragm and into the right chest cavity, where a large caliber non jacketed bullet was recovered. This bullet caused extensive bleeding in the bowel, liver and buttock. A fourth bullet entered the back of the right lower leg below the knee and lodged in the muscle of the right thigh from which a large caliber non-jacketed bullet was recovered. The bullets were turned over to the police for analysis. Police Officer Robert Stott of the Firearms Identification Unit examined the bullets submitted by the medical examiner. He determined that the bullets were .38/.357 caliber with similar microscopic characteristics, but that there were insufficient markings to determine whether the bullets were fired from the same firearm.[2]

Officers Smith and Tyler secured the crime scene and began a crime scene log. Crime Scene Unit (CSU) Officer Lamont Fox and technician William Whitehouse photographed the area, took measurements and sketched the crime scene. A cell phone, located about three feet away from the body, and a small black screw top vial found between the Jeep and the Lexus parked behind it, items which had been marked previously during Officer Smith and Officer Tyler's initial survey of the crime scene, were collected. No ballistic evidence was recovered. Technician Whitehouse performed a latent fingerprint examination on the vial and was able to develop a fingerprint from the vial. He also obtained a latent fingerprint from the face of the cell phone. Clifford Parsons, the fingerprint technician from CSU was able to make an identification of the fingerprint on the glass vial. He determined that the print belonged to appellant based on his finding that the print had consistent characteristics with appellant, 13 points of identification. He found no prints belonging to Rassan Richardson.

---

[2] Officer Stott analyzed two bullet specimens submitted on property receipt number 2697822. The stated sources were Armstrong's right chest wall and right thigh.

Homicide Detective John Keen was assigned to coordinate the homicide investigation. In connection with the investigation into the death of Derrick Armstrong, he conducted interviews of Lamar Adams, Gregory Powell and Ebony Dawkins, all of whom were present at the time of the shooting. On January 11, 2007, Lamar Adams (Adams), who was friends with both appellant and Armstrong, was interviewed by Detective Keen and Detective Bayard. Adams told the detectives that he was at 65th and Regent Street along with Armstrong. Appellant arrived, and an argument ensued about money. A physical fight ensued after appellant insulted Armstrong's girlfriend. It was broken up by Gregory Powell (Powell, aka Black), but they began to fight again and although broken up by Adams, they again continued to fight. The fight stopped when it appeared that Armstrong had won. A couple minutes thereafter, Adams observed appellant point a revolver at Armstrong, who was standing at the pole on Regent Street, and shoot him in the back 3-4 times. Appellant was on the sidewalk about ten feet away when he shot him. After shooting, Adams stated that appellant ran down Regent Street toward 63rd Street. He did not mention Rassan Richardson. Upon completion of the interview, Adams read and signed the statement. Adams also identified appellant's photograph from a photo spread and signed the photograph to so indicate. At trial, Adams denied that it was his signature on the statement and the photograph. The Commonwealth introduced exemplars of Adams' signature for comparison with the signature on the photograph and the statement.

Gregory Powell was interviewed by Homicide detectives on January 17, 2007, and again on March 10, 2007. However, at the time of appellant's trial, Powell was unavailable and his August 29, 2007, preliminary hearing testimony was read into the record. Powell testified that on January 4, 2007, he witnessed a fight between appellant and Armstrong. He broke the fight up at two different times and it appeared that Armstrong was winning the fight. Powell again broke the fight up. Armstrong then began walking towards the crowd at the corner of 65th Street. As appellant walked toward the crowd, Powell testified that he observed Richardson hand appellant a chrome .38 caliber handgun. Powell ran toward the alleyway. When he reached the front of the alleyway, he heard gunshots. He looked back and saw that Armstrong had been shot. At that point, Powell saw his car, being driven by Mir, pulling away from the space where it had been parked with appellant and Richardson as passengers.[3] He ran after his car and caught up with it in the middle of the block. Powell made appellant and Richardson get out because he did not want to be involved with the shooting.

---

[3] "Mir" was not identified further.

Powell testified that he did not see any other guns at the time of the shooting. Powell acknowledged that it was his signature on the statement and the photograph of appellant. On March 10, 2008, Powell was re-interviewed by homicide detectives and indicated that he observed Richardson pass appellant the gun. However, Powell testified that he did not see Richardson pass a gun; that the detectives made him sign the statement saying that he did.

Detective Keen interviewed Ebony Dawkins approximately a week after Armstrong was killed. At the time of the interview, Dawkins appeared extremely jittery and nervous prompting Detective Keen to inquire whether she was under the influence of drugs or alcohol. She answered no and the interviewed commenced. Ebony Dawkins, who lived at 6335 Regent Street, told Detective Keen that, at the time of the incident, she was in her bedroom on the second floor facing Regent Street. She heard some noises coming from outside and looked out of the window to see the source. She observed appellant and Armstrong, whom she knew from the neighborhood, fighting each other. Several other people were outside as well, namely, Chuck, Samir, Powell and others. She came downstairs to her front door to further observe the incident. A male broke up the fight, but after a few minutes, appellant and Armstrong began to fight again. Armstrong appeared to be winning, appellant was on the ground. The fighting stopped then began again. Someone else broke it up and Armstrong began to walk away toward 65th Street from out in the street, toward the sidewalk in front of Dawkins' house. Appellant was across the street near 6340 Regent Street, when she observed a black male, later identified as Richardson, hand appellant a gun, a silver revolver. Appellant took the gun, and began walking toward Armstrong. She then closed her door, and was walking toward her living room when she heard 4-5 gunshots and a car speed off. She put on her sneakers, called 911 and told them to send an ambulance. Dawkins then went outside and observed Armstrong lying on the street. She identified Richardson from a photo array. At trial, Dawkins testified in conformance with her statement. She was extensively cross-examined on her memory and the inconsistencies with her preliminary hearing testimony. She testified that, while she had always had problems with her memory generally, she was sure she saw Richardson give appellant the gun.

On March 22, 2007, an arrest warrant was obtained for appellant and Richardson. Appellant surrendered himself at the Homicide Unit on March 22, 2007. Richardson was arrested without incident the same day. Both appellant and Richardson were charged with murder and related offenses. Following a jury trial, appellant was convicted of third degree murder, conspiracy and possession of an instrument of crime and sentenced to 21-42 years incarceration.

(Trial Court Opinion 716 EDA 2009). Post sentence motions were litigated and denied. On June 10, 2011, the Superior Court affirmed the judgment of sentence and appellant's petition for allowance of appeal to the Supreme Court was denied on November 22, 2011.

Appellant timely filed a first pro se PCRA and counsel was appointed. On July 29, 2016, PCRA counsel filed an amended PCRA petition requesting an evidentiary hearing, claiming that appellant was entitled to relief because trial counsel failed to request a curative instruction following denial of his motion for a mistrial in the wake of improper remarks made by the prosecutor during the questioning of Commonwealth witness Lamar Adams, objections to which were sustained by the Court, and that appellate counsel was ineffective for failing to raise the issue of this Court's alleged abuse of discretion in denying trial counsel's request for a mistrial based upon prosecutorial misconduct during closing remarks; remarks that appellant alleges implied that the witnesses were afraid to testify because appellant and the co-defendant were drug dealers when the jury had heard no evidence concerning the business they were in. On January 13, 2017, the Commonwealth filed a motion to dismiss alleging that appellant's claims are meritless and his petition should be dismissed without a hearing. The Court reviewed appellant's petition, the Commonwealth's response, the record and the controlling law and determined that appellant was not entitled to PCRA relief. Following proper notice, appellant's petition for relief was dismissed on March 24, 2017. This appeal followed.

5

The standard of review regarding an order denying a petition under the PCRA is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. Commonwealth v. Davis, 86 A.3d 883, 887 (Pa. Super. 2014). The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. Id. Moreover, the PCRA court has discretion to dismiss a petition without a hearing when the court is satisfied there are no genuine issues concerning any material fact, the defendant is not entitled to post-conviction collateral relief, and no legitimate purpose would be served by further proceedings. Commonwealth v. Cousar, 154 A.3d 287, 297 (Pa. 2017). Appellant complains that both trial counsel and appellate counsel provided ineffective assistance. It is well-settled law that counsel is presumed to have provided effective assistance. Commonwealth v. Sepulveda, 55 A.3d 1108, 1117 (Pa.2012). To be entitled to relief on an ineffectiveness claim, a PCRA petitioner must establish: (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) he suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability the result of the proceeding would have been different. Commonwealth v. Treiber, 632 Pa. 449, 466, 121 A.3d 435, 445 (2015). If a petitioner fails to prove any of these prongs, his claim fails. Commonwealth v. Simpson, 66 A.3d 253, 260 (Pa.2013).

Appellant complains that trial counsel was ineffective for failing to request a curative instruction following the denial of his request for a mistrial

on the basis that the prosecutor made improper comment during a line of questioning he alleges implied that appellant intimidated Commonwealth witness Lamar Adams. On direct examination, the Commonwealth asked Adams about the statement he gave police after the incident where he told police that appellant was the shooter. At trial, Adams disavowed the statement, claiming that he was high on drugs when he gave the statement and did not remember the shooting, and denied giving the statement to police. (N.T. 06/24/08 pg. 156-160; 175-177) The prosecutor then embarked on a series of questions about what people who come in to testify for the Commonwealth are called on the streets. When Adams responded, "Rats," the prosecutor began questioning Adams about what happens to "rats" on the street. Trial counsel objected three separate times to this line of questioning, and motioned the Court for a mistrial. In each instance, the Court sustained the objection, but denied counsel's request for a mistrial. (N.T. 06/24/08 pg. 199-201) Appellant avers that under these circumstances, trial counsel was compelled to request a curative instruction, and because he did not, he provided ineffective representation as the issue of whether a curative instruction was appropriate was not preserved for direct appeal review. Assuming, *arguendo*, that this is sufficient to meet the arguable merit prong of the ineffectiveness test, appellant fails to demonstrate that trial counsel's actions were unreasonable or that he was prejudiced. See Commonwealth v. Brown, 48 A.3d 1275, 1277 (Pa.Super.2012)(Counsel's actions will not be found to have lacked a reasonable basis unless the petitioner establishes that an alternative not

7

chosen by counsel offered a potential for success substantially greater than the course actually pursued); Commonwealth v. Johnson, 139 A.3d 1257, 1272 (Pa. 2016)(Regarding the prejudice prong, a petitioner must demonstrate that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction). Accordingly, this claim fails. See Commonwealth v. Steele, 599 Pa. 341, 961 A.2d 786, 797 (Pa. 2008) (stating that when an appellant fails "to set forth all three prongs of the ineffectiveness test and [to] meaningfully discuss them, he is not entitled to relief, and we are constrained to find such claims waived for lack of development").

Appellant further complains that appellate counsel was ineffective for failing to raise on appeal that the Court allegedly abused its discretion when it denied trial counsel's request for a mistrial, based upon prosecutorial misconduct, after the prosecutor allegedly implied that the witnesses were fearful of testifying because appellant and his co-defendant were drug dealers, when the jury heard no evidence concerning what business they were in. The trial court is vested with the discretion to grant a mistrial whenever the alleged prejudicial event may reasonably be said to deprive the defendant of a fair and impartial trial. Commonwealth v. Hogentogler, 53 A .3d 866, 878 (Pa. Super. 2012). The Court has wide discretion in declaring a mistrial and its decision will not be reversed absent an abuse of discretion. Commonwealth v. Moury, 992 A.2d 162, 175 (Pa.Super.2010). Abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or

8

misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will... discretion is abused. Commonwealth v. Wright, 599 Pa. 270, 310, 961 A.2d 119, 142 (2008).

During closing remarks, the prosecutor stated that witnesses Lamar Adams and Gregory Powell had a drug past, "so at a minimum, we know what kind of business they were in." Trial counsel objected. The objection was sustained and the comment was stricken from the record. The Court then gave a cautionary instruction to the jury: "Jurors, there is no evidence concerning that and you are not to consider that as part of this evidence. You are to consider only the evidence that was presented in the courtroom." (N.T. 06/27/08 pg. 96-97) When the prosecutor again mentioned "businessmen," the Court again sustained the objection, ordered that the comment be stricken from the record, and gave another cautionary instruction. (N.T. 06/27/08 pg. 125) Following closing, trial counsel motioned for a mistrial based upon the prosecutor's implication during closing that witnesses were afraid to come forward because appellant and the co-defendant were neighborhood drug dealers. (N.T. 06/27/08 pg. 136-137) The Court denied counsel's motion, but agreed to give, and did give, an additional cautionary instruction during the jury charge. Despite this, appellant claims that mistrial was required because the prosecutor's inference that appellant was a drug dealer had the unavoidable effect of preventing jurors from weighing the evidence and rendering a true verdict thereby depriving appellant of a fair and impartial trial.

The remedy of a mistrial is an extreme remedy required only when an incident is of such a nature that its unavoidable effect is to deprive the [appellant] of a fair and impartial tribunal. Commonwealth v. Bozic, 2010 Pa. Super. 114, 997 A.2d 1211, 1226 (2010). A prosecutor's remarks do not constitute reversible error unless their unavoidable effect ... [was] to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict. Id. Furthermore, a mistrial is not necessary where cautionary instructions are adequate to overcome prejudice. Commonwealth v. Chamberlain, 612 Pa. 107, 175–76, 30 A.3d 381, 422 (2011). Here, the Court sustained trial counsel's objections, and gave a prompt effective cautionary instruction in each instance, informing the jury that there was no evidence about a business appellant and the co-defendant were engaged in, and that they were only to consider the evidence presented in the courtroom. (N.T. 06/27/08 pg. 96-97, 125, 136-137) Therefore any potential prejudice was removed. See Commonwealth v. Bryant, 67 A.3d 716, 730 (Pa.2013) (stating that prompt and effective instructions may remove prejudice resulting from improper comments by a prosecutor). Moreover, during preliminary instructions, the jury was instructed that they are required to follow the Courts rulings and instructions and that, whenever the Court sustains an objection or orders evidence stricken from the record, they must completely disregard that evidence when deciding the case. (N.T. 06/23/08 pg. 244, 247-48) The jury is presumed to follow the court's instructions. Commonwealth v. Stokes, 839 A.2d 226, 230 (Pa.2003).

10

Therefore, appellate counsel was not ineffective for failing to raise on direct appeal the claim that the Court abused its discretion by denying trial counsel's motion for mistrial. See <u>Commonwealth v. Freeland</u>, 106 A.3d 768, 778 (Pa.Super.2014) (stating that trial counsel will not be considered ineffective for failing to pursue claims that lack merit). Accordingly, this claim fails.

For the foregoing reasons, appellant is not entitled to post conviction relief.

BY THE COURT:

_____
SHEILA WOODS-SKIPPER, J

11