J-A05038-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SASALDINE J. JONES | : | |
| | : | |
| Appellant | : | No. 2445 EDA 2021 |

Appeal from the PCRA Order Entered November 17, 2021
In the Court of Common Pleas of Philadelphia County
Criminal Division at CP-51-CR-0108471-2006

BEFORE:  LAZARUS, J., KUNSELMAN, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.:                    **FILED APRIL 18, 2023**

Sasaldine J. Jones (Appellant) appeals from the order dismissing his third Post Conviction Relief Act (PCRA)[1] petition.  We affirm.

The PCRA court summarized the underlying facts as follows:

On the afternoon of May 16, 2005, [Appellant] and a friend (Ronald Hall) were having lunch at Sonny's Diner in Philadelphia. Sitting at another table were a man named Ed and Ed's friend (Banger or AB).  At some point, Ed got up and went to the bathroom.  When he returned to his table, he began looking around and muttering that his $2000 ring was missing.  Ed asked two diner employees, William Warthen and Alfonso Lanier, if they had seen the ring.  They said they had not.  Ed asked if they had seen anyone go into the bathroom.  Mr. Warthen recalled that the man in the "brown dickie suit" [(Appellant)] had gone into the bathroom around that time.  Ed then left the diner.  Later that day, [Appellant] and Hall returned to the diner and confronted Mr. Warthen about supposedly having told Ed that [Appellant] stole the ring.  Mr. Warthen assured [Appellant] that all he had told Ed

---

[1] 42 Pa.C.S.A. §§ 9541-9546.

was that [Appellant] had gone into the bathroom. [Appellant] was furious and reached for a silver gun in his waistband, but Hall convinced him not to do that in the diner. Later that day, however, [Appellant] again confronted Mr. Warthen at the rear door [of] the diner and this time [Appellant] pulled out his gun and [fatally] shot Mr. Warthen through the head.

PCRA Court Opinion, 7/8/22, at 1-2 (citation omitted).

On June 15, 2007, following a five-day trial, the jury convicted Appellant of first-degree murder, carrying a firearm without a license, and possession of an instrument of crime.[2] On July 27, 2007, the trial court sentenced Appellant to life in prison for murder, followed by an aggregate six to twelve years for the remaining convictions. Appellant did not file a post-sentence motion or direct appeal.

Appellant subsequently filed two unsuccessful PCRA petitions. On November 9, 2020, Appellant filed the instant, counseled PCRA petition, his third. The Commonwealth responded that the petition was untimely, lacked merit, and should be dismissed. Commonwealth Response, 4/20/21, at 1-2. Appellant filed a reply. On November 17, 2021, the PCRA court dismissed Appellant's petition without a hearing.[3] PCRA Court Order, 11/17/21.

---

[2] 18 Pa.C.S.A. §§ 2502(a), 6106(a)(1), and 907.

[3] The PCRA court failed to provide notice pursuant to Pa.R.Crim.P. 907. *See* *Commonwealth v. Feighery*, 661 A.2d 437, 439 (Pa. Super. 1995). Nonetheless, Appellant has waived any challenge to the absence of Rule 907 notice by not raising the issue on appeal. *See Commonwealth v. Taylor*, 65 A.3d 462, 468 (Pa. Super. 2013) ("The failure to challenge the absence of a Rule 907 notice constitutes waiver.").

Appellant timely filed this appeal. Appellant and the PCRA court have complied with Pa.R.A.P. 1925.

Appellant presents the following issue:

Did the PCRA Court err in finding, without benefit of a hearing, that the newly discovered evidence from Rasheem Hall [(Rasheem)] could have been obtained at or prior to trial through reasonable diligence, the evidence is cumulative or being used solely to impeach credibility, and/or it would not likely compel a different verdict?

Appellant's Brief at 2.

In reviewing the PCRA court's denial of relief, we "examine whether the PCRA court's determinations are supported by the record and are free of legal error." *Commonwealth v. Roney*, 79 A.3d 595, 603 (Pa. 2013) (citation omitted). The denial of an evidentiary hearing "is within the discretion of the PCRA court and will not be overturned absent an abuse of discretion." *Commonwealth v. Mason*, 130 A.3d 601, 617 (Pa. 2015).

We first consider the timeliness of Appellant's PCRA petition as it implicates our jurisdiction. *See Commonwealth v. Davis*, 86 A.3d 883, 887 (Pa. Super. 2014) (recognizing the PCRA's time limitations implicate the Court's jurisdiction). All PCRA petitions, including second and subsequent petitions, must be filed within one year of when the petitioner's judgment of sentence becomes final. *See* 42 Pa.C.S.A. § 9545(b)(1). "[A] judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42

Pa.C.S.A. § 9545(b)(3).   Because the PCRA's timeliness requirements are jurisdictional, a court may not address the merits of issues if the petition was not timely filed.  ***Commonwealth v. Spotz***, 171 A.3d 675, 678 (Pa. 2017).

Appellant's judgment of sentence became final 30 days after he was sentenced, *i.e.*, August 28, 2007.   ***See*** Pa.R.Crim.P. 720(a)(3) ("If the defendant does not file a timely post-sentence motion, the defendant's notice of appeal shall be filed within 30 days of imposition of sentence").   Because August 27, 2007, fell on a Sunday, Appellant's judgment of sentence became final on Monday, August 28, 2007.   ***See*** 1 Pa.C.S.A. § 1908 (providing "Whenever the last day of any such period shall fall on Saturday or Sunday, … such day shall be omitted from the computation.").   Under the PCRA, Appellant was required to file a petition on or before August 28, 2008.  ***See*** 42 Pa.C.S.A. § 9545(b)(1).  Appellant's petition, filed on November 9, 2020, is facially untimely.  ***See id.***

Appellant attempts to invoke the newly discovered facts exception to the PCRA's timeliness requirement.  ***See*** 42 Pa.C.S.A. § 9545(b)(1)(ii); ***see also id.*** § 9545(b)(2) (requiring a petitioner to invoke a timeliness exception within one year of when the claim could have been presented).  "To qualify for an exception to the PCRA's time limitations under subsection 9545(b)(1)(ii), a petitioner need only establish that the facts upon which the claim is based were unknown to him and could not have been ascertained by the exercise of due diligence."  ***Commonwealth v. Burton***, 158 A.3d 618,

629 (Pa. 2017). Importantly, it is the petitioner's burden to demonstrate he could not have previously discovered the information with due diligence. 42 Pa.C.S.A. § 9545(b)(1)(ii); *see also Commonwealth v. Brown*, 111 A.3d 171, 176 (Pa. Super. 2015) ("Due diligence demands that the petitioner take reasonable steps to protect his own interests."). If the petitioner can establish both prongs, the PCRA court may exercise jurisdiction. *Commonwealth v. Fears*, 250 A.3d 1180, 1199 (Pa. 2021).

Here, Appellant asserts as newly discovered facts, the August 7, 2020 statement Rasheem Hall (Rasheem) gave to Appellant's private investigator. Rasheem memorialized his statement in an affidavit which states:

> I went inside the diner with my friend Doughboy, [and] I saw the guy AB right away, he was sitting at the table. I gave a head nod to say what's up, I order my sandwich, and then I was leaving … and looked over towards AB and he looked like he was looking for something and got up and walked towards the bathroom. I didn't think anything of it at the time and walked out of the diner with my friend, Doughboy.
>
> We went over to Doughboy's apartment in the projects which was close to the diner. We were at 11th and Cumberland. We went back to the diner about 15 minutes later to pick up our food.
>
> When I went back inside, the owner, Sunny, told me that the guy AB left his cell phone number and said that AB thinks that my brother Ronald Hall and his friend took his ring.
>
> Me and my friend leave and we went to 15th and York St. I called my brother on the phone and let him know that the guy AB wanted to talk to him about his ring being stolen. I then called AB myself to [ask] what was going on. I asked why he was looking for my brother and he said that his ring went missing and he thinks they got it. A[B] then asked me where I was from, and I told him 15th and York. He was then telling about all the people he knew in my

area. After our conversation about the people he knew from the area he hung up and about 5 to 10 minutes [later] he showed up.

He showed up with the guy with the dreads. I then called my brother back again and told [him] that AB was there. I handed my phone to AB and he was talking to my brother Ronald. *After about 5 or 10 minutes, my brother Ronald pulled up with Jay (Appellant). All of us were all ta[l]king about the ring.*

My brother told AB he didn't have his ring and that's when AB said that the guy who worked inside the diner named Wild Bill told him that they had his ring. My brother got real mad that someone was accusing him of stealing the ring *so we all went back to the diner*. The guy Wild Bill and another guy, who was the cook[,] came outside and we were all on the corner.

There was an argument, and everyone was playing the blame game. At that point, **I saw AB pull a gun out of the side of [his] waistband and then sho[o]t the guy in his head right behind his ear**. Then AB and his friend, the one with the dreads[,] took off and ran south on Broad St. They never took off in their car. After that I went across the street on the other side of Broad St. and saw the police [had] arrived. I walked back over, and I was watching them try to do CPR on the guy and then the ambulance came, and they put him inside.

* * *

I came to find out who took the ring. Wild Bill, the guy who got killed[,] stole the ring. I saw the guy AB again after that and he told me.

Appellant's Brief at 7-8 (italic emphasis added, bold emphasis in original) (quoting Affidavit of Rasheem Hall). Rasheem claims "AB" shot the victim. *See id.*

Appellant asserts he "did not know prior to receiving the newly discovered information from Rasheem Hall that Rasheem had been standing on the corner and had witnessed the shooting." Appellant's Brief at 9.

Appellant states: "There was a large crowd of people — between 15 and 20 — who had been standing outside." *Id.* Appellant asserts he only discovered Rasheem through the efforts of his present counsel and her private investigator. *Id.* at 10. Appellant claims he did not know of Rasheem's presence because he was talking on a cell phone and "not focused on what was going on around him." *Id.* Appellant also states Ronald Hall, "did not advise [] Appellant that his brother had been present and seen the shooting either." *Id.*

Appellant further asserts he could not have discovered this evidence sooner with due diligence. *Id.* at 8. Appellant claims his newly retained counsel "had flyers put up in the neighborhood around the Diner where the crime occurred seeking new information." *Id.* at 10. In addition, new counsel sent a private investigator to the diner to obtain statements from "several individuals mentioned in the case materials," including Ronald Hall. *Id.* After locating Ronald Hall, the investigator determined that Rasheem had witnessed the shooting. *Id.*

> In rejecting Appellant's argument, the PCRA court explained:
>
> [Appellant] has failed to establish that he could not have obtained the information prior to the conclusion of trial by the exercise of due diligence. The petition and the affidavit are at odds with each other. [Appellant] claims to have not known Rasheem Hall was present at the murder. In his reply to the Commonwealth, [Appellant] says "just because you know someone from the neighborhood does not mean that you knew that person was a witness to a crime." However, Rasheem Hall states he was with [Appellant] at the time of the murder and was standing next to his brother Ronald Hall. **Rasheem Hall's name appears in pre-**

- 7 -

**trial discovery and at trial.** Indeed, Ronald Hall, who was involved in the shooting, is Rasheem Hall's brother ….

PCRA Court Opinion, 7/8/22, at 6 (emphasis added).

Our review confirms Appellant failed to demonstrate that he could not have previously discovered the information with due diligence. Appellant concedes Rasheem was mentioned in the "case materials," but fails to explain why he did not take action to locate and obtain information from Rasheem sooner. Consequently, Appellant's claim of newly discovered facts fails. *See Brown*, 111 A.3d at 176. Because Appellant failed to establish the newly discovered facts exception to the PCRA's timeliness requirement, the PCRA court and this Court lack jurisdiction over Appellant's third petition. *See* 42 Pa.C.S.A. § 9545(b)(1).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/18/2023

- 8 -