J. S06034/20

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| ERIC ROBINSON, | : | No. 25 EDA 2019 |
| | : | |
| Appellant | : | |

Appeal from the Order Dated November 27, 2018,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-1206701-1981

BEFORE: LAZARUS, J., McLAUGHLIN, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          Filed: March 16, 2020

Eric Robinson appeals **pro se** from the November 27, 2018 order dismissing his untimely serial petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546, and his motion for post-conviction DNA testing. After careful review, we affirm.

The relevant facts of this case were set forth in the PCRA court's opinion and need not be reiterated here. (**See** PCRA court opinion, 6/4/19 at 1-3.) The pertinent procedural history of this case, as gleaned from the certified record, is as follows: On February 8, 1982, appellant was found guilty following a bench trial of first-degree murder[1] and related offenses in connection with the shooting death of Yefim Zaks in West Philadelphia. The

---

[1] 18 Pa.C.S.A. 2501(a).

trial court sentenced appellant to a mandatory term of life imprisonment. On August 31, 1984, a panel of this court affirmed appellant's judgment of sentence in part and vacated it in part, and our supreme court denied allowance of appeal on January 7, 1985. *See Commonwealth v. Robinson*, 481 A.2d 1376 (Pa.Super. 1984) (unpublished memorandum), *appeal denied*, ___ A.2d ___ (Pa. 1985).[2] Appellant did not file a petition for writ of *certiorari* with the Supreme Court of the United States. From 1986 to 2012, appellant filed five unsuccessful PCRA petitions.

Appellant filed the instant *pro se* PCRA petition, his sixth, on March 8, 2016. Contemporaneously with this petition, appellant filed a *pro se* motion for post-conviction DNA testing, pursuant to 42 Pa.C.S.A. § 9543.1. On July 31, 2018, the PCRA court appointed counsel,[3] who subsequently filed a "no merit" letter and petition to withdraw in accordance with *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988), and *Commonwealth v. Finley*, 550 A.2d 213 (Pa.Super. 1988) (*en banc*). On October 22, 2018, the PCRA court provided appellant with notice of its intention to dismiss his petition without a hearing, pursuant to Pa.R.Crim.P. 907(1). Appellant filed a *pro se* response to the PCRA court's Rule 907 notice on November 15, 2018. On November 27, 2018, the PCRA court granted counsel permission to withdraw. That same

---

[2] We were unable to locate our supreme court's denial of appellant's *allocator* petition in our search of the Atlantic Reporter.

[3] George S. Yacoubian, Esq.

day, the PCRA court dismissed both appellant's untimely serial PCRA petition and his motion for post-conviction DNA testing. This timely appeal followed.[4]

Appellant's argument on appeal is two-fold. Appellant first contends that he is entitled to collateral relief because of an unspecified constitutional violation, the ineffectiveness of his counsel, and the unavailability of exculpatory DNA evidence. (**See pro se** PCRA petition, 3/8/16 at ¶¶ 4-5.) Appellant also contends that "the [PCRA court] erred as a matter of law in determining that DNA testing would not produce exculpatory evidence that would establish appellant's actual innocence." (Appellant's brief at 14 (extraneous capitalization omitted)).

## I. Dismissal of PCRA petition

Proper appellate review of a PCRA court's dismissal of a PCRA petition is limited to the examination of "whether the PCRA court's determination is supported by the record and free of legal error." **Commonwealth v. Miller**, 102 A.3d 988, 992 (Pa.Super. 2014) (citation omitted). "This Court grants great deference to the findings of the PCRA court, and we will not disturb those findings merely because the record could support a contrary holding." **Commonwealth v. Hickman**, 799 A.2d 136, 140 (Pa.Super. 2002) (citation omitted). Additionally, we note that, "[a]lthough this Court is willing to

---

[4] The PCRA court did not order appellant to file a concise statement of errors complained of on appeal, in accordance with Pa.R.A.P. 1925(b). The PCRA court filed its Rule 1925(a) opinion on June 4, 2019.

liberally construe materials filed by a **pro se** litigant, **pro se** status confers no special benefit upon the appellant[.]" **Commonwealth v. Adams**, 882 A.2d 496, 498 (Pa.Super. 2005) (citation omitted).

Preliminarily, we must consider the timeliness of appellant's PCRA petition because it implicates the jurisdiction of this court and the PCRA court. **Commonwealth v. Davis**, 86 A.3d 883, 887 (Pa.Super. 2014) (citation omitted). All PCRA petitions, including second and subsequent petitions, must be filed within one year of when a defendant's judgment of sentence becomes final. 42 Pa.C.S.A. § 9545(b)(1). "A judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of the time for seeking the review." 42 Pa.C.S.A. § 9545(b)(3). If a PCRA petition is untimely, a court lacks jurisdiction over the petition. **Commonwealth v. Callahan**, 101 A.3d 118, 120-121 (Pa.Super. 2014).

Here, appellant's judgment of sentence became final on April 8, 1985, 90 days after our supreme court denied allowance of appeal and the deadline for filing a petition for writ of **certiorari** with the Supreme Court of the United States expired. **See** 42 Pa.C.S.A. § 9545(b)(3). Accordingly, appellant had until April 8, 1986, to file a timely PCRA petition. **See** 42 Pa.C.S.A. § 9545(b)(1). Appellant's instant petition was filed on March 8, 2016, almost 30 years past the deadline, and is patently untimely. As a result, the PCRA court lacked jurisdiction to review appellant's petition, unless he pleads and

proves that one of the following three statutory exceptions to the one-year jurisdictional time-bar applies.

The three statutory exceptions to the PCRA time-bar are as follows:

(i)   the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii)  the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S.A. § 9545(b)(1).

Instantly, the record reveals that appellant has failed to invoke any of the three statutory exceptions to the one-year jurisdictional time-bar. On the contrary, appellant's brief makes no argument whatsoever with respect to timeliness of his petition and does not even cite Section 9545(b)(1). Accordingly, we lack jurisdiction to review the merits of any of the claims appellant raised in his untimely petition. **See Callahan**, 101 A.3d at 123 (holding, if a PCRA petition is untimely on its face, or fails to meet one of the three statutory exceptions to the time-bar, we lack jurisdiction to review it on the merits).

## II.   Denial of motion for post-conviction DNA testing

We now turn to appellant's claim that the PCRA court erred in denying his *pro se* motion for post-conviction DNA testing.   (Appellant's brief at 14-27.)

> Motions for post-conviction DNA tests, while considered post-conviction petitions under the PCRA, are clearly separate and distinct from claims pursuant to other sections of the PCRA.   It is well-recognized that the one-year time bar proscribed under the PCRA does not apply to petitions for post-conviction DNA testing under Section 9543.1.

*Commonwealth v. Perry*, 959 A.2d 932, 938 (Pa.Super. 2008) (citations and internal quotation marks omitted).

Our standard of review of an order denying a motion for post-conviction DNA testing is well settled:

> [T]he [PCRA] court's application of a statute is a question of law that compels plenary review to determine whether the court committed an error of law.   When reviewing an order denying a motion for post-conviction DNA testing, this Court determines whether the movant satisfied the statutory requirements listed in Section 9543.1 [of the PCRA]. We can affirm the court's decision if there is any basis to support it, even if we rely on different grounds to affirm.

*Commonwealth v. Williams*, 35 A.3d 44, 47 (Pa.Super. 2011) (internal citations omitted), *appeal denied*, 50 A.3d 121 (Pa. 2012).

The requirements for obtaining post-conviction DNA testing are set forth in 42 Pa.C.S.A. § 9543.1(c).[5]  As a panel of this court explained in **Williams**,

> [Section 9543.1] sets forth several threshold requirements to obtain DNA testing: (1) the evidence specified must be available for testing on the date of the motion; (2) if the evidence was discovered prior to the applicant's conviction, it was not already DNA tested because (a) technology for testing did not exist at the time of the applicant's trial; (b) the applicant's counsel did not request testing in a case that went to verdict before January 1, 1995; or (c) counsel sought funds from the court to pay for the testing because his client was indigent, and the court refused the request despite the client's indigency.
>
> Additionally, . . . [u]nder [S]ection 9543.1(c)(3), the petitioner is required to present a **prima facie** case that the requested DNA testing, assuming it gives exculpatory results, would establish the petitioner's actual innocence of the crime.  Under [S]ection 9543.1(d)(2), the court is directed not to order the testing if it determines, after review of the trial record, that there is no reasonable possibility that the testing would produce exculpatory evidence to establish petitioner's actual innocence.  From the clear words and plain meaning of these provisions, there can be no mistake that the burden lies with the petitioner to make a **prima facie** case that favorable results from the requested DNA testing would establish his innocence.  We note that the statute does not require petitioner to show that the DNA testing results would be favorable.  However, the court is required to review not only the motion [for DNA testing], but also the trial record, and then make a determination as to whether there is a reasonable possibility that DNA testing would produce

---

[5] We note that Section 9543.1 was amended and the new language became effective December 24, 2018.  **See** Act 2018, Oct. 24, P.L. 896, No. 147, § 1. Because appellant filed his motion on March 8, 2016, this amended language does not apply.

> exculpatory evidence **that would establish petitioner's actual innocence.**

***Williams***, 35 A.3d at 49-50 (citation omitted; emphasis in original); ***see also*** 42 Pa.C.S.A. § 9543.1(d)(2)(i) (stating, "[t]he court shall not order the testing requested . . . if, after review of the record of the applicant's trial, the court determines that there is no reasonable possibility that the testing would produce exculpatory evidence that . . . would establish the applicant's actual innocence of the offense for which the applicant was convicted[.]").

In ***In re Payne***, 129 A.3d 546 (Pa.Super. 2015) (***en banc***), ***appeal denied***, 145 A.3d 167 (Pa. 2016), a panel of this court explained that actual innocence in the context of Section 9543.1(d)(2)(i) is demonstrated by evidence that "make[s] it more likely than not that no reasonable juror would have found [the applicant] guilty beyond a reasonable doubt." ***Payne***, 129 A.3d at 556 (citation and internal quotation marks omitted). The ***Payne*** court explained that, "[t]he threshold question is, therefore, not the likelihood of proof of innocence, but whether it is within the realm of reason that some result(s) could prove innocence." ***Id.*** at 563.

Herein, appellant argues that he complied with all requirements of Section 9543.1(c) and baldly contends that the PCRA court failed to apply the aforementioned standard set forth in ***Payne***. (Appellant's brief at 4, 17-20.) The record belies these contentions.

Preliminarily, we note that appellant has failed to proffer any evidence that the items he desired to be DNA tested still exist more than 30 years after

his convictions, as he was required to do. **See** 42 Pa.C.S.A. § 9543.1(a)(2) (stating, "[t]he evidence shall be available for testing as of the date of the motion."). While he asserted his actual innocence in his PCRA petition, appellant also failed to present a **prima facie** case demonstrating that the results of the DNA testing, even if favorable, would establish his actual innocence. **See id.** at § 9543.1(c)(2), (3)(i), and (3)(ii)(A). To this point, we agree with the sound reasoning of the PCRA court:

> The evidence adduced at trial overwhelmingly established that [appellant] was responsible for the murder of Yefim Zaks and DNA testing would not have changed the verdict.
>
> . . . .
>
> First, the absence of [appellant's] DNA on Zaks' body or on the seat cover used to wrap the deceased would not exculpate him by proving that he never handled the body, as he suggests. The lack of [appellant's] DNA material on the seat cover or corpse would neither prove nor disprove that [appellant] killed Zaks. . . .
>
> Similarly, lack of gunshot residue on [appellant's] jacket would neither prove nor disprove he killed Zaks. Although [appellant] was wearing the jacket at the time of his arrest, there is no evidence that he was wearing it when he shot Zaks. Once again, the absence of evidence is not evidence of absence and cannot prove actual innocence. Therefore, a lack of gunshot residue on [appellant's] jacket would not serve to prove his actual innocence.
>
> Third, [appellant] claims that Zaks' blood type was never tested and that there was no evidence that Zaks' blood type was B. [Appellant] cites Dr. Charles Tumosa's testimony at trial where he testified that he never received a sample of the deceased's blood.

[Appellant] claims that if Zaks' blood were analyzed for blood type, it would not match the Type B blood found on [appellant's] jeans. This claim is easily belied by the record. Earlier on the same day that Dr. Tumosa testified at trial, the Deputy Medical Examiner Dr. Robert L. Catherman testified that he examined Zaks' body, determined the cause and approximate time of death, and performed an autopsy. As part of the autopsy, Dr. Catherman performed a blood[] typing test on Zaks' blood and determined that it was Type B. After Dr. Catherman testified, Dr. Frank Thompson, Jr., a Histologist in the Office of the Medical Examiner, testified that he also performed blood[] typing analysis on a sample from Zaks' body and determined that it was Type B. [Appellant] has provided no evidentiary basis to suggest that the blood on the jeans, which indeed matched Zaks' blood type, belonged to anyone else other than Zaks. Rather, his entire argument rests on the false belief that Zaks' blood type was never determined, and he believes that performing a blood typing test would show they do not match. Since performing a blood type analysis at this time would only duplicate analysis already performed and which showed that Zaks' blood type matched the blood on [appellant's] jeans, this would in no way prove actual innocence.

Last, [appellant] claims that DNA testing will prove that the two individuals he claims used Zaks' credit cards at a bank on the day of the murder are the true perpetrators. This claim is wholly without merit. First, there is nothing in the trial record regarding these two individuals or the incident at the bank. Second, DNA testing would neither prove nor disprove whether two unknown individuals participated in some way in Zaks' murder. There are no known samples of DNA material from these two unnamed individuals and [appellant] does not even specify which evidence in connection with the alleged bank incident he believes should be subjected to DNA evidence or how it would establish his actual innocence. He simply baldly claims that these two people are the true murderers. This is

> insufficient to establish the ***prima facie*** case that [appellant] needs for relief.

PCRA court opinion, 6/4/19 at 8-11 (footnote and citations to notes of testimony omitted).

Contrary to appellant's contention, it is clear from the PCRA court's analysis that it applied the appropriate standard in this matter. Accordingly, we discern no error on the part of the PCRA court and conclude the PCRA court properly dismissed appellant's untimely serial PCRA petition and his motion for post-conviction DNA testing.

Order affirmed.


Lazarus, J. joins this Memorandum.

McLaughlin, J. concurs in the result.



Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary



Date: March 16, 2020

- 11 -