J-S37004-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| JAMAL LEWIS | : | |
| | : | |
| | : | No. 2160 EDA 2024 |

Appeal from the PCRA Order Entered July 16, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0803401-2004

BEFORE:   DUBOW, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY DUBOW, J.:                      **FILED JANUARY 6, 2026**

The Commonwealth appeals from the July 16, 2024 order entered in the Philadelphia County Court of Common Pleas in which the PCRA court granted the petition of Appellee, Jamal Lewis, filed pursuant to the Post-Conviction Relief Act ("PCRA"),[1] and awarded Appellee a new trial.  After careful review, we reverse.

The relevant facts and procedural history are as follows.  On December 24, 2003, Appellee, co-conspirator Joseph Waring, co-defendant Terry Murray, and another man approached Lionel Dyches and Tyriece Wims, who were sitting in their car.  Appellee and his co-conspirators intended to rob Dyches and Wims.  During the robbery, Appellee fired two shots into the car,

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-46.

injuring Dyches and killing Wims. As the car pulled away, Appellee fired another shot that hit a bystander, Marcus Christie.

Detective Pete Cruz was assigned to investigate the case. On January 11, 2004, Detective David Baker assisted Detective Cruz by interviewing Dyches ("January 2004 Interview"). During this interview, Dyches did not implicate Appellee in the shooting or identify the man who shot him.

The case was subsequently reassigned to Detectives Stephen Vivarina and Jack McDermott. After Waring was arrested on an unrelated charge, he informed officers that he had participated in the robbery. Detectives Vivarina and McDermott interviewed Waring, and Waring told the detectives that Appellee had shot Dyches, Wims, and Christie.

On March 23, 2004, Detective Vivarina interviewed Dyches for the second time ("March 2004 Interview"). During this interview, Dyches picked Appellee out of a photo array as the man who had shot him and Wims.

The police arrested Appellee. Appellee confessed to police that he had shot Wims, Dyches, and Christie, but asserted that he had done so in self-defense after hearing what he thought was a shot fired at him from the street.

On July 27, 2004, Detectives Vivarina and McDermott interviewed Christie ("July 2004 Interview"). During this interview, Christie did not identify the man who shot him but picked Murray out of a photo array as one of the men involved in the robbery. On August 3, 2004, Detectives Vivarina and McDermott interviewed Dyches for the third time ("August 2004

Interview"). During this interview, Dyches picked Murray out of a photo array as one of the men involved in the robbery.

Appellee proceeded to a jury trial. The Commonwealth introduced, *inter alia*, Appellee's inculpatory statements and testimony from Waring describing the robbery and identifying Appellee as the shooter. The Commonwealth also called Dyches to testify. Dyches was uncooperative, so the Commonwealth instead entered his second March 2004 Interview into evidence. The Commonwealth also attempted to enter Dyches's first January 2004 Interview into evidence, but the defense objected, and the court sustained the objection. Christie did not testify, and the substance of Christie's July 2004 Interview was not presented to the jury. The defense's strategy at trial consisted of proving that Appellee had acted in self-defense.

At the conclusion of trial, the jury convicted Appellee of Second-Degree Murder, and two counts each of Robbery, Criminal Conspiracy, and Aggravated Assault. On April 3, 2007, the court sentenced Appellee to an aggregate term of life plus 20 to 40 years of incarceration. This Court affirmed the judgment of sentence in November 2007, and the Supreme Court denied allowance of appeal on May 29, 2008. ***Commonwealth v. Lewis***, 944 A.2d 795 (Pa. Super 2007) (unpublished decision), *appeal denied* 952 A.2d 675 (Pa. 2008).

Appellee filed one previous unsuccessful PCRA petition. On October 29, 2019, Appellee filed the instant PCRA petition, asserting that he met the newly-discovered fact timeliness exception to the PCRA's jurisdictional time

bar based on an affidavit signed by Christie wherein Christie averred that although Appellee was at the scene, Appellee had not shot Christie, and that Christie had been physically abused by a police officer[2] in 2004.[3]

On July 17, 2020, the District Attorney's Office provided Appellee with a police misconduct disclosure concerning Detective Baker ("Baker PMD"). In the Baker PMD, the Police Board of Inquiry concluded that during an interview of a suspect in 1998, Detective Baker had denied representation to the suspect.[4] On July 26, 2020, Appellee filed a supplemental PCRA petition asserting that the Commonwealth had violated **Brady**[5] by failing to disclose the Baker PMD at the time of Appellee's trial.

The PCRA court held a bifurcated evidentiary hearing where Appellee's trial counsel, Eugene Tinari, Esq., and Christie testified. Attorney Tinari testified, *inter alia*, that he would have used evidence of the Baker PMD at trial to discredit the Commonwealth's case by casting doubt on Dyches's identification of Appellee as the shooter. Christie testified, *inter alia*, that he did not know who had shot Wims and Dyches and, contrary to his signed affidavit, testified that he had not seen Appellee at the scene of the shooting.

_____

[2] Christie did not identify the police officer who abused him, describing only a "tall, skinny guy." PCRA Pet. Ex. P-3, dated 3/13/19, at 2.

[3] Appellee also claimed that he had obtained after-discovered recantation testimony from Waring. On October 3, 2023, Appellee withdrew this claim.

[4] The 1998 interview was unrelated to this case.

[5] **Brady v. Maryland**, 373 U.S. 83 (1963).

On July 16, 2024, the PCRA court granted Appellee's PCRA petition and ordered a new trial based on both of Appellee's claims.

This timely appeal followed. The Commonwealth and the PCRA court complied with Pa.R.A.P. 1925.

The Commonwealth raises the following issues for our review:

1. Did the PCRA court err by granting relief based on an alleged **Brady** violation for the alleged non-disclosure of misconduct committed by Detective David Baker in an unrelated case, where the detective's involvement in this case was extremely limited and he did not testify at trial?

2. Did the PCRA court err by granting relief based on alleged after-discovered evidence of a previously known but non-testifying witness's recantation of a *non-inculpatory* statement, where [Appellee] failed to prove due diligence or prejudice?

Commonwealth's Br. at 4 (emphasis in original).

This Court reviews the grant of a new trial pursuant to a PCRA petition to determine whether the record supports the court's determination and whether its order is otherwise free of legal error. **See Commonwealth v. Fears**, 86 A.3d 795, 803 (Pa. 2014). While we grant great deference to the PCRA court's findings of fact if supported by the record, we review the court's legal conclusions *de novo*. **See Commonwealth v. Smith**, 167 A.3d 782, 787 (Pa. Super. 2017); **Commonwealth v. Sandusky**, 324 A.3d 551, 564 (Pa. Super. 2024). "We view the findings of the PCRA court and the evidence of record in a light most favorable to the prevailing party." **Sandusky**, 324 A.3d at 564 (citation omitted).

**A.**

- 5 -

The Commonwealth first asserts that the PCRA court erred in granting a new trial based on Appellee's claim that the Commonwealth committed a **Brady** violation by failing to disclose the Baker PMD before trial. Commonwealth's Br. at 16-21.

Initially, we reiterate that "the PCRA's timeliness requirements are jurisdictional in nature and must be strictly construed; courts may not address the merits of the issues raised in a petition if it is not timely filed." **Commonwealth v. Walters**, 135 A.3d 589, 591 (Pa. Super. 2016) (citations omitted). Appellee's PCRA petition, filed over 11 years after his sentence became final, is facially untimely. We agree with the PCRA court, however, that Appellee satisfied the newly-discovered facts exception to the PCRA's jurisdictional time bar, which requires proof that "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence" and that Appellee filed his petition "within one year of the date the claim could have been presented." 42 Pa.C.S § 9545(b). Specifically, Appellee filed his claim within one year of the Commonwealth's disclosure of the Baker PMD. Moreover, Appellee acted with the requisite diligence in pursuing this information as he was not required to investigate Detective Baker's misconduct until being alerted to it. **See, e.g., Commonwealth v. Davis**, 86 A.3d 883, 890-91 (Pa. Super. 2014) (finding that due diligence did not require defendant to make an unreasonable assumption that the Commonwealth had acted improperly in prosecuting his case).

Accordingly, we turn to the merits of the Commonwealth's claim that the PCRA court erred in granting Appellee relief. "To be eligible for relief under [the PCRA], the petitioner must plead and prove by a preponderance of the evidence" that their conviction resulted from one of seven enumerated circumstances, including a violation of the United States Constitution. 42 Pa.C.S. § 9543(a)(2)(i).

In **Brady**, the United States Supreme Court held that "suppression by the prosecution of favorable evidence to an accused upon request violates due process where the evidence is material either to guilt or to punishment[.]" 373 U.S. at 87. "[T]o establish a **Brady** violation, a defendant must demonstrate that: (1) the evidence was suppressed by the Commonwealth, either willfully or inadvertently; (2) the evidence was favorable to the defendant; and (3) the evidence was material, in that its omission resulted in prejudice to the defendant." **Commonwealth v. Haskins**, 60 A.3d 538, 547 (Pa. Super. 2012).

"Evidence is material under **Brady** when there is a reasonable probability that, had the evidence been disclosed, the result of the trial could have been different." **Id.** "[A] reviewing court is not to review the undisclosed evidence in isolation, but, rather, the omission is to be evaluated in the context of the entire record." **Commonwealth v. Dennis**, 17 A.3d 297, 309 (Pa. 2011). "When conducting this analysis in the PCRA context, a defendant must establish that the alleged **Brady** violation so undermined the truth-determining process that no reliable adjudication of guilt or innocence could

have taken place." **Haskins**, 60 A.3d at 547 (citations and internal quotation marks omitted).

The Commonwealth argues that the PCRA court erred in granting relief because Appellee "failed to prove that evidence of Detective Baker's conduct was material to his innocence or guilt[.]" Commonwealth's Br. at 16. Specifically, the Commonwealth states that Detective Baker's "*only* role was to conduct [Dyches's January 2004 Interview], in which Dyches did not inculpate defendant (or anyone else) in the shooting." **Id.** at 18 (emphasis in original). The Commonwealth further emphasizes that "the substance of [the January 2004 Interview] was not even put before a jury" because "Dyches testified at defendant's trial [and] claimed that he did not recall the [January 2004 Interview]" and, thus, only the March 2004 Interview conducted by Detectives Vivarina and McDermott was admitted as evidence. **Id.** at 19. The Commonwealth emphasizes that "at no point has Dyches [] accused *any* detectives in this case, including Detective Baker, of misconduct." **Id.** (emphasis in original).

The PCRA court found that the Baker PMD would have been material at trial "because the Commonwealth's suppression of Detective [] Baker's misconduct presented a serious flaw in the investigation, prosecution, and defense of Appellee" because "Attorney Tinari[] credibly testified that he would have used the [Baker PMD] during trial to support his case[.]" PCRA Ct. Op., 12/9/24, at 18.

After a careful review of the record, we conclude that the PCRA's legal conclusions are not supported by the record or relevant case law. We contrast this case with **Commonwealth v. Williams**, 215 A.3d 1019 (Pa. Super. 2019), in which this Court granted a new trial based on evidence of a police officer's misconduct. In **Williams**, the Commonwealth conceded the need for a new trial following the disclosure of "serious allegations" of police misconduct involving the sole witness in the case — the discredited officer. **Id.** at 1022. Moreover, the petitioner proffered an affidavit from another officer who contradicted the discredited officer's testimony at trial. **Id.** at 1025.

In contrast to **Williams**, while the Commonwealth acknowledged in the Baker PMD that Detective Baker committed misconduct in an unrelated 1998 interview, it did not concede that Detective Baker committed misconduct in Appellee's case. Appellee does not present any evidence of such misconduct. Moreover, unlike in **Williams**, in which the verdict relied solely on the discredited officer's testimony, Detective Baker conducted only the January 2004 Interview, which was never presented to the jury, and did not have any further involvement in the case or testify at trial.

The PCRA court based its conclusion that the evidence was material primarily on Attorney Tinari's testimony that he would have used the Baker PMD to "show the second statement…one that Detective Baker gave, was coerced" and, thus, cast doubt on Dyches's identification of Appellee. PCRA Ct. Op. at 15 (quoting N.T. Hr'g, 6/14/22, at 19). In his supplemental PCRA

petition, Appellee similarly argues that the statement taken by Detective Baker "was utilized by the Commonwealth as substantive evidence against the [p]etitioner." PCRA Pet., 7/26/20, at 3-4. However, the record demonstrates that Detective Baker conducted only Dyches's first January 2004 Interview, and not the second March 2004 Interview that the prosecution introduced at trial when Dyches proved uncooperative. The record demonstrates that the January 2004 Interview was never before the jury and, in any event, did not implicate Appellee in the shooting.

We, thus, conclude that Appellee failed to demonstrate that the Baker PMD was material, which is required to establish that the Commonwealth committed a ***Brady*** violation.[6] Accordingly, the PCRA court erred in granting a new trial on the basis of this evidence.

**B.**

We next address the Commonwealth's claim that the PCRA court erred in granting a new trial based on Christie's affidavit. The Commonwealth initially asserts that the PCRA court lacked jurisdiction to consider Appellee's claim as he failed to plead and prove an exception to the PCRA time-bar. Commonwealth's Br. at 25-28.

_____

[6] To the extent that Appellee characterizes the Baker PMD as after-discovered evidence of police misconduct, we determine that he is also not entitled to relief on this basis. To prove an after-discovered evidence claim, the petitioner must show that the evidence "would likely compel a different verdict." ***Commonwealth v. Cox***, 146 A.3d 221, 228 (Pa. 2016). For the same reasons that the evidence is not material, we find the evidence would not likely compel a different verdict.

Appellee claims that Christie's statement satisfies the newly-discovered facts exception to the PCRA jurisdictional time bar, which requires proof that "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence" and that Appellee filed his petition "within one year of the date the claim could have been presented." 42 Pa.C.S § 9545(b).

"Due diligence demands that the petitioner take reasonable steps to protect his own interests." **Commonwealth v. Brown**, 111 A.3d 171, 176 (Pa. Super. 2015). "A petitioner must explain why he could not have learned the new fact(s) earlier with the exercise of due diligence." **Id.** For instance, this Court has held that a petitioner did not sufficiently prove due diligence where the petitioner knew that a witness had been present at the scene but did not describe the steps he had taken to obtain the new testimony and made "no claim that he attempted to contact [the witness] at any point since trial to determine whether [the witness] had any additional information regarding the day of the shooting." **Id.** at 179.

In this case, the Commonwealth avers that Appellee did not exercise his due diligence and, as a result, cannot satisfy the requirement of the time-bar exception. Commonwealth's Br. at 25-28. The Commonwealth compares this case to **Brown, supra**, arguing that **Brown** makes clear that "due diligence is not about the alleged witness's motivation (or lack thereof) to *offer* helpful information, but the defendant's conduct in *attempting to obtain* information[.]" **Id.** at 27 (emphasis in original). In the Commonwealth's

- 11 -

view, "[Appellee] did not aver that he took *any* steps to discover the 'new fact' sooner." *Id.* at 26 (emphasis in original).

The PCRA court summarily concluded that Appellee exercised due diligence because Christie's affidavit "was not received until 2019" and, therefore, "could not have been obtained prior to the end of trial." PCRA Ct. Op. at 23. ***Brown***, however, makes clear that a petitioner has an obligation to plead and prove that he took reasonable steps to obtain the new witness testimony in the time **after** trial. 111 A.3d at 178-79. The PCRA court, thus, did not engage in the required analysis of whether Appellee sufficiently pled and proved his due diligence in the time before he received Christie's affidavit in 2019.

In his PCRA petition, Appellee asserts only that he did not contact Christie in the time after trial because one of his defenses at trial was that Christie "was the actual shooter" and, therefore "[g]iven this clear conflict of interests, Appellee had no reason to believe that Christie would ever be willing to offer any helpful testi[mony] on his behalf." PCRA Pet., 10/29/19, at 10-11 (citing N.T. Trial, 3/9/06, at 3-38, 133-34). Appellee, however, mischaracterizes his own defense strategy at trial. Appellee's inculpatory statements placed him at the scene of the crime, and, thus, his defense at trial was that he had shot the victims in self-defense, in part based on his account to police that he had heard an initial shot fired at him from the street. In his PCRA petition, Appellee mischaracterizes trial counsel's suggestion

during closing argument that Christie may have fired that initial shot as an accusation that Christie was the "actual shooter."

More relevant to the due diligence analysis, the record demonstrates that Appellee knew that Christie, a victim of the shooting, was an eyewitness present at the scene of the crime. Despite this, Appellee makes no claim in his petition that he attempted to contact Christie at any point between 2006 and 2019 to determine whether Christie had any additional information about the day of the shooting or the identity of the shooter. *See Brown*, 111 A.3d at 178-79. Accordingly, Appellee did not sufficiently plead and prove the due diligence required to assert the newly-discovered fact exception to the PCRA time-bar, and the PCRA court, therefore, lacked jurisdiction to review this after-discovered evidence claim.[7]

We, thus, reverse the order of the PCRA court granting Appellee a new trial.

Order reversed. Jurisdiction relinquished.

_____

[7] Even if Appellee had met the newly-discovered fact exception, the PCRA court's conclusion that Christie's affidavit would likely compel a different verdict is not supported by the record. The PCRA court characterizes Christie's statement as a "recantation" that "directly contradict[ed Christie's July 2004] statement identifying Appellee as the shooter, which was utilized by the Commonwealth to support their prosecution." PCRA Ct. Op. at 24. However, Christie, in the July 2004 Interview, did not identify Appellee as the shooter or even place him at the scene of the robbery. PCRA Pet. Ex. P-4, dated 7/27/04, at 3-9. Moreover, the trial court did not permit the Commonwealth to place the content of the July 2004 Interview before the jury. N.T. Trial, 3/7/6, at 248. Accordingly, even if it had jurisdiction, the PCRA court erred in granting a new trial on the basis of this claim.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>1/6/2026</u>